CC-96-2                                                                 1

En el Tribunal Supremo de Puerto Rico

| | |
|---|---|
| CONCHITA IGARTUA DE LA ROSA, ET ALS. <br><br>     Demandante-Peticionaria <br><br>     V. <br><br> ADMINISTRACION DE DERECHO AL TRABAJO , ET ALS. <br><br><br>       Demandados-Recurrido | Apelación <br><br> 98TSPR170 |

Número del Caso: CC-96-2

Abogados de la Parte Peticionaria: LIC. CARLOS J. ACEVEDO LAZZARINI

Abogados de la Parte Recurrida: LIC. RAMON LUIS JULIA RAMOS

Abogados de la Parte Interventora:

Tribunal de Instancia: Superior, Sala de Aguadilla

Juez del Tribunal de Primera Instancia: Hon. Miguel A. Montalvo Rosario

Tribunal de circuito de Apelaciones: Circuito Regional IV de Mayaguez y Aguadilla

Juez Ponente: Hon. Brau Ramírez  (Panel integrado por su presidente, Juez Brau Ramírez, el Juez Colón Birriel y la Juez López Vilanova)

Fecha: 12/23/1998

Materia: Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las de las decisiones del Tribunal.  Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Conchita Igartúa de la Rosa, et. als.
    Demandantes-Peticionarios

                v.                    CC-96-2        Apelación

Administración del Derecho
al Trabajo, et als.

    Demandados-Recurridos

Opinión del Tribunal emitida por el Juez Asociado Hernández Denton

San Juan,Puerto Ricoa 23 de diciembre de 1998.

Debemos determinar cuándo comenzó a decursar el término prescriptivo de un año que la peticionaria en el caso de epígrafe tenía para instar una acción por discrimen político y violación de derechos civiles contra la Administración del Derecho al Trabajo. Además, debemos resolver si al no acudir oportunamente ante la Junta de Apelaciones del Sistema de Personal a cuestionar cierta determinación de su patrono, incumplió con el requisito jurisdiccional de agotar los remedios administrativos antes de acudir al foro judicial.

I.

La señora Conchita Igartúa de la Rosa laboró desde 1989 en un puesto de carrera como Oficial Ejecutiva III en la Administración del Derecho al Trabajo [en adelante A.D.T.]. Como parte de sus responsabilidades en dicho puesto, fungía como Subdirectora de la Oficina Regional de la Oficina de Aguadilla, aunque no ocupaba esta plaza en propiedad.

En junio de 1992 fue nombrada en propiedad en la posición de Directora Regional de la Oficina de Aguadilla. Aunque esta nueva posición era de confianza, ocupó la misma sin renunciar a los derechos que había adquirido previamente como empleada de carrera.

Luego de las elecciones generales del 3 de noviembre de 1992 y el cambio de administración en la agencia en enero de 1993, Igartúa de la Rosa solicitó ser reinstalada a su antiguo puesto como empleada de carrera. Su solicitud fue concedida, por lo que el 25 de enero de 1993 comenzó a laborar en el puesto de carrera que anteriormente ocupaba en A.D.T. Sin embargo, al regresar a su puesto original no le fueron asignadas las responsabilidades que ejerció bajo la administración anterior como Subdirectora de la Oficina Regional de Aguadilla. Ante ello, solicitó a la agencia un desglose de las funciones que debía realizar.

Hubo un intercambio de cartas entre las partes relacionado a las funciones que Igartúa debía ejercer, al cual nos referiremos oportunamente. Eventualmente, el señor Wilfredo Martínez Ruvira, entonces Administrador de la agencia, le remitió a Igartúa de la Rosa una carta con fecha de 3 de mayo de 1993, en la que le expresó que no habría de fungir como Subdirectora regional, ya que, a su juicio, "de la propia Especificación de Clase de Oficial Ejecutivo III, la función de Subdirector no se considera[ba] como [...] mandatoria, sino discrecional". Apéndice de la Apelación, a la pág. B-19. Según surge del expediente, Igartúa de la Rosa recibió esta notificación el 26 de mayo de 1993. Véase, Hoja de Trámite de la Oficina Regional de A.D.T.,

Apéndice de la Apelación, a la pág. B-18, (en donde se indica que la señora Igartúa recibió la carta del Administrador el 26 de mayo de 1993).

No conforme con esta decisión, el 28 de junio de 1993, Igartúa de la Rosa presentó una apelación ante la Junta de Apelaciones del Sistema de Administración de Personal, [en adelante J.A.S.A.P.]. En ella alegó que el título funcional del puesto de carrera sobre el cual tenía derechos propietarios era el de Subdirector de la Oficina Regional de Aguadilla y que al ser reinstalada a su puesto original había sido despojada del ejercicio de las funciones inherentes a dicho cargo. En consecuencia, reclamó el derecho a desempeñar las funciones relacionadas a este puesto. Apéndice de la Apelación, a las págs. B-28-B-29.

El 5 de noviembre de 1993, J.A.S.A.P. desestimó el recurso por falta de jurisdicción. A juicio del foro administrativo apelativo el recurso fue presentado fuera del término de treinta (30) días que establece la ley para acudir ante dicho organismo. Véase, 3 L.P.R.A. sec. 2172. Una moción de reconsideración presentada por Igartúa de la Rosa fue declarada no ha lugar mediante resolución del 13 de diciembre de 1993. Igartúa no solicitó la revisión judicial de esta determinación.

Ante lo anterior, y ante la continuada negativa de la agencia de acceder a asignarle los deberes que antes realizaba como Subdirectora regional, el 26 de mayo de 1994 Igartúa de la Rosa inició un procedimiento judicial en el extinto Tribunal Superior por alegado discrimen en el empleo. En éste alegó, en síntesis, que había sido discriminada y humillada por razón de su afiliación política. Alegó, además, que el despojo de las funciones inherentes a su puesto era parte del discrimen en su contra.

En diciembre de 1994, A.D.T. contestó la demanda. Además, presentó una moción de desestimación en la que adujo que la reclamación estaba prescrita ya que había sido instada transcurrido el término de un año

que establece el Art. 1868 del Código Civil de Puerto Rico. 31 L.P.R.A. sec. 5298. Planteó, además, que J.A.S.A.P. había adjudicado con carácter de finalidad varios de los elementos esenciales de su demanda, por lo que, a su juicio, Igartúa de la Rosa estaba impedida de relitigarlos.

Luego de examinar los argumentos de las partes, el tribunal de instancia emitió una resolución en la que declaró no ha lugar la solicitud de desestimación. Contra esta determinación, A.D.T. acudió ante el Tribunal de Circuito de Apelaciones, el cual revocó. A juicio del foro apelativo, Igartúa de la Rosa presentó su demanda expirado el término de un año que tenía para ello. Estimó el Tribunal de Circuito que la fecha del 3 de mayo de 1993 era el punto de partida del término prescriptivo, ya que en esa ocasión la reclamante recibió una carta del Administrador de la agencia en la que se le informó que no fungiría como Subdirectora Regional. Añadió el tribunal apelativo que: "[l]a demanda, sin embargo, no fue presentada sino hasta el 26 de mayo de 1994, más de un año después de dicha fecha y un año y cuatro meses después de la fecha en que la reinstalaron a su puesto de Oficial Ejecutiva III." Sentencia de 9 de noviembre de 1995, a la pág. 7; Apéndice de la Apelación, a la pág. C-37. En virtud de lo anterior, ordenó la desestimación de la reclamación contra A.D.T.

Contra esta determinación Igartúa de la Rosa acudió ante nos. Aunque denominó su escrito como "Petición de Certiorari", en virtud de las disposiciones de ley vigentes a la fecha de presentación del recurso ante nos (2 de enero de 1996), lo acogimos como un recurso de apelación. Véase, Plan de Reorganización de la Rama Judicial de 1994.

La única controversia planteada ante nuestra consideración en el recurso es si erró el Tribunal de Circuito de Apelaciones al resolver que la demanda estaba prescrita. Debemos, por tanto, determinar cuándo comenzó a decursar el término prescriptivo que Igartúa de la Rosa tenía para instar la acción por violación a sus derechos civiles y discrimen en el empleo.

II.

Conforme a nuestros previos pronunciamientos, el término prescriptivo de un año que establece el Art. 1868 del Código Civil de Puerto Rico es el término aplicable a las acciones por razón de discrimen en el empleo.[1] Cintrón v. E.L.A., 127 D.P.R. 582, 590 (1990). Por imperativo del propio Art. 1868, este término comienza a decursar desde que el agraviado tuvo conocimiento del daño.

En Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347 (1988) resolvimos que en casos de cesantías de empleados públicos el término prescriptivo comienza a computarse desde el momento en que el empleado es informado de la cesantía. No obstante, allí advertimos que "la determinación del momento exacto en que se conoce o debió razonablemente conocer el daño, constituye un delicado problema de prueba e interpretación". Id. a la pág. 360; véase además, Rivera Encarnación v. E.L.A., 113 D.P.R. 383, 385 (1982). Destacamos que el momento en que **se produce el daño** no es el criterio determinante del inicio del cómputo del término prescriptivo, sino el momento en que el perjudicado **adviene en conocimiento** del mismo.

Más tarde, en Cintrón v. E.L.A., supra, aclaramos que la norma establecida en Delgado Rodríguez no era exclusiva a situaciones de cesantías, sino que era más abarcadora. Afirmamos que la norma "[a]plica cuando un empleado público es objeto de una acción discriminatoria arbitraria o ilegal, bien sea despido, traslado, reclasificación, cambio de status, etc.". Cintrón v. E.L.A., 127 D.P.R. a la pág. 592. Al resumir la norma aplicable en cuanto al inicio del cómputo del término prescriptivo en estos contextos, dijimos:

---

[1] Este artículo dispone:

Prescriben por el transcurso de un año:

(1) La acción para recobrar o retener la posesión.
(2) La acción para exigir la responsabilidad civil por injuria o calumnia, y las obligaciones derivadas de la culpa o negligencia de que se trata en el art. 1802 de esta ley desde que lo supo el agraviado. 31 L.P.R.A. sec. 5298.

En tales casos, el término prescriptivo comienza a correr **con la notificación al empleado de la actuación administrativa de la autoridad nominadora** y no con el decreto de ilegalidad [por parte de J.A.S.A.P.]. Es desde aquel momento que el empleado **tiene o debe tener conocimiento de los daños causados por la actuación de la agencia**. Id. (énfasis suplido).

Claro está, como toda acción sujeta a un término prescriptivo, en situaciones de reclamaciones por razón de discrimen en el empleo el término para instar la acción puede ser interrumpido por el oportuno ejercicio de la acción ante los tribunales, por reclamación extrajudicial del acreedor, o por cualquier acto de reconocimiento de la deuda por parte del deudor. Art. 1873 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5303.

La solución del presente caso está cubierta por las normas expresadas. Examinemos, por tanto, cuándo Igartúa de la Rosa advino en conocimiento del daño por el cual reclama indemnización para determinar si, en efecto, al instar la demanda en el tribunal de instancia el 26 de mayo de 1994, la acción estaba prescrita.

III.

A.

Surge del expediente ante nos que la señora Igartúa de la Rosa fue reinstalada a su posición de carrera en A.D.T. el 25 de enero de 1993. Al notificar esta reinstalación, el Administrador Wilfredo Martínez Ruvira le remitió una carta con fecha de 20 de enero de 1993. En ella le indicó que con efectividad al día 25 de enero de 1993 comenzaría "a ocupar el Puesto Número A-023 de Oficial Ejecutivo III adscrito a la Oficina Regional de Aguadilla [...]". Anejo E-1. En ella, además de expresarle el salario mensual que devengaría, el Administrador le indicó que ocuparía un puesto de carrera y que conservaría su status de empleado regular en el servicio de carrera. Además, le informó lo siguiente:

> Próximamente le haremos entrega de la Descripción del Puesto (OCAP-16) indicativa de los deberes y responsabilidades asignados al puesto que pasa a ocupar, así como copia del Informe de Cambio que registra oficialmente la acción de personal que le comunico. Apéndice de la Apelación, a la pág. B-15.

Esta carta no contiene notificación alguna relacionada a que la señora Igartúa de la Rosa dejaría de desempeñar las funciones de Subdirectora Regional.

El 22 de febrero de 1993 la señora Igartúa de la Rosa remitió una carta al señor Wilfredo Martínez Ruvira en la que le indicó que habían transcurrido veintiún (21) días laborables desde su reinstalación sin que le remitiesen la notificación sobre la descripción de su puesto, que la propia agencia le indicó que le sería remitida. Asimismo, le solicitó al Administrador de A.D.T. que le asignara "funciones similares a las que ejercía antes de ocupar el puesto de confianza como Directora Regional, en Aguadilla". Apéndice de la Apelación, a la pág. B-12.

Surge de los autos que el 5 de marzo de 1993, la Oficina Regional de Aguadilla le emitió a la señora Igartúa el formulario OCAP-16 en donde se detallaban las funciones que ejercería. Igartúa de la Rosa, sin embargo, lo devolvió a la Oficina del Administrador sin firmarlo bajo el fundamento de que en el mismo se habían omitido las funciones de Subdirectora Regional que ejercía antes de ser ubicada en un puesto de confianza. Al respecto indicó:

> La clasificación de Oficial Ejecutivo III que ocupé desde febrero de 1989 en la Oficina Regional de Aguadilla y en la cual fui re-instalada [sic] el 25 de enero de 1993 corresponde a las funciones de Sub-directora Regional por lo que no puedo aceptar que aparezca en blanco el encasillado #7. De igual manera en el encasillado #9 no aparecen los oficiales ejecutivos I y otros funcionarios que supervisaba.
>
> Agradeceré se cumplimente los encasillados #7 y #9 de la Ocap-16 de manera que pueda firmarla para realizar las tareas que corresponden a mi nombramiento. Apéndice de la Apelación, a la pág. 76.

Tiempo después, el señor David Muñiz Torres, entonces Director Regional de A.D.T., le remitió una carta al Administrador de la agencia en relación a las tareas asignadas a la señora Igartúa. Expresó en ella que:

> [l]a Sra. Igartúa de Suárez ocupa un puesto de Oficial Ejecutivo III en esta oficina Regional y las tareas que le he asignado están dentro de la clasificación de dicho puesto; las

mismas no son de Sub-Directora Regional como ella alega, siendo esto así no procede la petición que le está formulando. Por dicho motivo no estoy endosando el memorando que le envía la señora Igartúa. Apéndice de la Apelación, a la pág. B-17.

Más adelante expresa:

En cuanto a su alegación del apartado #9 [de la señora Igartúa], **debo indicarle que se debe figurar la supervisión que ejerce sobre los dos puestos de Oficial Ejecutivo I de esta Oficina Regional**. Id. (énfasis suplido).

Esta carta tiene fecha del 16 de marzo de 1993 y, según consta en una hoja de trámite anejada a la misma, la señora Igartúa la recibió el día 19 de marzo de 1993. Apéndice de la Apelación, a la pág. B-16. Nótese que en ella el Director Regional le advierte al Administrador de la agencia que tal y como la señora Igartúa afirmaba, en el formulario que describía las funciones de su puesto se había omitido incluir que supervisaría los puestos de Oficial Ejecutivo I.

Eventualmente, el señor Wilfredo Martínez Ruvira, Administrador de A.D.T., le remitió a la señora Igartúa una carta en la que categóricamente le expresó, en parte, lo siguiente:

Luego de reunirnos y discutir la situación que plantea con el Sr. David Muñiz Torres, Director Regional, a la luz de la información y documentos disponibles y de las disposiciones reglamentarias aplicables, determiné revisar el documento original que usted se negó a firmar y disponer un cambio en los deberes asignados al puesto que ocupa, a base de las disposiciones de la Sección 5.10 del Reglamento de Personal para Empleados de Carrera de esta Agencia. Esto, en ánimo de lograr una utilización óptima de los recursos humanos disponibles. [...].

Como podrá advertir de la propia Especificación de Clase de Oficial Ejecutivo III, la función de Subdirector no se contempla como una mandatoria, sino discrecional. Como cuestión de hecho, en su OCAP-16 original, previo pasar usted al Servicio de Confianza, no figura en el apartado número 7 la función de Subdirectora que usted reclama y en adición, al reinstalarla al Servicio de Carrera, no funge usted como tal. Le agradeceré que firme y entregue al señor Muñiz Torres el formulario OCAP-16 que le incluyo, el cual corresponde a las tareas de su puesto, a fin de concluir con este proceso y hacerle llegar su copia oficial. Apéndice de la Apelación, a las págs. B-19-B-20.

Finalmente, en la carta se advierte a Igartúa de la Rosa sobre su derecho a acudir a J.A.S.A.P. a solicitar revisión de esa determinación. La carta tiene fecha del 3 de mayo de 1993. Sin embargo, obra en autos una hoja de trámite que revela que Igartúa de la

Rosa la recibió **el 26 de mayo de 1993.** Apéndice de la Apelación, a la pág. B-18.

La única forma en que la demanda judicial instada por Igartúa de la Rosa no estaría prescrita es si se toma esta fecha como punto de partida para el cómputo del término prescriptivo ya que instó su demanda por alegado discrimen y violación de derechos civiles en el extinto Tribunal Superior el día 26 de mayo de 1994. Esa es precisamente su contención ante nos.

B.

Los hechos del caso nos persuaden de que Igartúa de la Rosa advino en conocimiento del daño que alega el 26 de mayo de 1993, fecha en que recibió la carta del Administrador de A.D.T. que puso punto final a la controversia que hasta entonces existía con relación a sus funciones. Esta carta constituye <u>la notificación de la autoridad nominadora</u> mediante la cual se le informó que no realizaría las funciones correspondientes el cargo de Subdirectora regional.

Antes del 26 de mayo de 1993 entre las partes sólo hubo un mero trámite administrativo que pretendía aclarar la naturaleza del puesto de carrera al que Igartúa había sido reinstalada. Al momento de su reinstalación Igartúa de la Rosa solicitó a A.D.T. que le remitiera el formulario que describía su puesto. Luego de recibirlo, lo devolvió a la autoridad nominadora sin firmarlo, porque, a su juicio, se había omitido información relacionada al puesto. Más tarde, Igartúa de la Rosa recibió una copia de una carta enviada al Administrador de A.D.T. en la que el Director Regional aceptaba que una de las funciones correspondientes al puesto de carrera de la señora Igartúa había sido omitida del formulario que lo describía. Es decir, el Director Regional de A.D.T. en Aguadilla, aunque no endosaba la totalidad del reclamo de Igartúa de la Rosa, admitió en esa carta que en la OCAP-16 que se le había enviado a Igartúa de la Rosa se había omitido información respecto a las funciones de su puesto. Finalmente, el Administrador de A.D.T. le remitió una carta a Igartúa en la que le

notificó que no realizaría las funciones relacionadas al puesto de Subdirectora Regional.

En el presente caso, la carta del Administrador de A.D.T. del 3 de mayo de 1993, recibida por Igartúa de la Rosa el 26 de mayo de 1994 constituye **la notificación de la autoridad nominadora al empleado** que establece el inicio del cómputo del término prescriptivo de la acción reclamada en su demanda por alegado discrimen político. Al recibirla, la demandante advino en conocimiento de que la autoridad nominadora la había privado de ejercer las funciones como Subdirectora, lo que a su juicio, configura el daño alegado en su demanda.[2]   Aunque este alegado daño inició al momento de su reinstalación, no es hasta esta notificación del Administrador de A.D.T. que Igartúa conoce que, en efecto, existe.

Como antes expresamos, esta notificación fue recibida por ella el 26 de mayo de 1993. Por ello, al instar su demanda por violación a sus derechos civiles el 26 de mayo de 1994, exactamente un año más tarde, su reclamación fue presentada oportunamente. Erró el Tribunal de Circuito de Apelaciones al decidir lo contrario.

Lo anterior, sin embargo, no pone punto final a la discusión del presente caso. La determinación del foro apelativo se basó, además, en el fundamento de que Igartúa de la Rosa estaba impedida de iniciar la presente reclamación debido a que debió agotar el trámite administrativo previo a acudir al cauce judicial. Asimismo, el foro apelativo sugiere en su Sentencia que J.A.S.A.P. adjudicó colateralmente un elemento esencial de su reclamación, a saber: que no contaba con un interés propietario sobre las funciones que reclamaba.

---

[2] La demanda de Igartúa de la Rosa señala que:

> con motivo del discrimen político por parte de la co-demandada, Administración del Derecho al Trabajo, la parte co-demandante, Igartúa de la Rosa, ha sido privada de sus funciones, y estos [sic] a su vez han asignado las funciones propia[s] del puesto de Oficial Ejecutivo III a otros empleados, marginando así a la co-demandante de todo insumo [sic] significativo de los procedimientos y operaciones para esta [sic] ejercer adecuadamente sus responsabilidades y

IV.

A.

De entrada, debemos destacar que no puede concluirse que J.A.S.A.P. adjudicó colateralmente un elemento de la controversia que enmarca la demanda presentada por Igartúa en los tribunales, pues, como antes adelantamos, J.A.S.A.P. determinó que no poseía jurisdicción para revisar la controversia. El señalamiento de dicha agencia en términos de que Igartúa de la Rosa no posee interés propietario alguno sobre las funciones de Subdirectora regional fue efectuado en la resolución que declaró no ha lugar por falta de jurisdicción una moción de reconsideración de la querellante. Esta única expresión no constituye una adjudicación en los méritos de la controversia que de por sí le impida litigarla en el cauce judicial, pues, a juicio de la propia agencia, carecía de jurisdicción para ello.

Aclarado lo anterior, pasemos a considerar el planteamiento de A.D.T. en términos de que Igartúa de la Rosa está impedida de iniciar la presente reclamación judicial por no haber agotado los remedios administrativos.

B.

La doctrina de agotamiento de remedios administrativos constituye, junto a la doctrina de jurisdicción primaria, una norma de abstención judicial que pretende lograr que las reclamaciones sometidas inicialmente a la esfera administrativa lleguen al foro judicial en el momento apropiado. Su objetivo básico es "evita[r] una intervención judicial innecesaria y a destiempo que tiend[a] a interferir con el cauce y desenlace normal del procedimiento administrativo". Delgado Rodríguez v. Nazario, 121 D.P.R., a las págs. 354-55; véase, Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991).

Este principio general del derecho administrativo está recogido en la sección 4.2 de la Ley de Procedimiento Administrativo Uniforme,

---

funciones, equivalente a una democión o despido constructivo. Demanda Enmendada, a la pág. 4, Anejo I-175.

según enmendada, [en adelante L.P.A.U.], Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2172, la cual dispone que:

> Una parte adversamente afectada por una orden o resolución final de una agencia **y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones [...]. (Énfasis suplido).

Se trata de un requisito jurisdiccional que no debe ser soslayado, Colón Ventura v. Méndez, Opinión y Sentencia de 5 de mayo de 1992, 130 D.P.R.___ (1992), a menos que se configure alguna de las limitadas excepciones que bajo nuestro ordenamiento jurídico justifican preterir el trámite administrativo, como lo son: (1) que el remedio que provee la agencia sea inadecuado; (2) que se pudiera producir un daño irreparable al promovente y en el balance de los intereses no se justifique agotar los remedios administrativos; (3) que se alegue la violación sustancial de derechos constitucionales; o (4) cuando se trata de un caso claro de falta de jurisdicción de la agencia, entre otras.[3] Véanse, Guadalupe Pérez v. Saldaña, Opinión y Sentencia de 7 de abril de 1993, 133 D.P.R. ___ (1993); Colón Ventura v. Méndez, supra; Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. a la pág. 355 n. 3; First Federal v. Asociación, 114 D.P.R. 426 (1983).

En el pasado, hemos señalado que en situaciones en las que un empleado acude simultáneamente al foro administrativo y al foro judicial, es aconsejable suspender la acción judicial hasta tanto el dictamen administrativo advenga final y firme. De este modo, se evita la duplicidad de esfuerzos y la posibilidad de determinaciones incompatibles o contradictorias. Cintrón v. E.L.A., 127 D.P.R. a la

---

[3] Dispone la L.P.A.U. al respecto:

> [...] en el caso de que dicho remedio sea inadecuado, o cuando el requerir su agotamiento resultare en un daño irreparable al promovente y en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales, o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos, o cuando sea un caso claro de falta de jurisdicción de la agencia, o cuando sea un asunto

pág. 595. Sin embargo, esto no significa que cuando la acción administrativa resulte imposible, como por ejemplo, cuando transcurre el término prescriptivo para instarla, el obrero queda imposibilitado de acudir al cauce judicial para reclamar indemnización por los daños que alega haber sufrido  en cuya adjudicación las normas de derecho administrativo no requieren la intervención primaria de la agencia administrativa.

Asimismo, en situaciones en las que se reclama al patrono indemnización por violación de derechos civiles, el empleado público "queda excusado de acudir en primera instancia al foro administrativo para reclamar cualquier responsabilidad civil de dicho patrono". Cintrón v. E.L.A., 127 D.P.R. a la pág. 595. Lo anterior es particularmente aplicable en las situaciones en las que el foro administrativo, como es el caso de J.A.S.A.P., no está facultado por ley para conceder indemnización por los daños y perjuicios sufridos por un empleado como consecuencia de una actuación gubernamental. En tales circunstancias el empleado público "debe acudir directamente al foro judicial con su acción en reclamo de daños y perjuicios para que se entienda interrumpido el término prescriptivo". Id.

No obstante, la presentación de una reclamación de daños en los tribunales no puede ser utilizada como un subterfugio para burlar la obligación de agotar los remedios administrativos o para restarle finalidad a una determinación administrativa cuando, inmersa en la reclamación judicial subyacen controversias que requieren ser adjudicadas inicialmente por el foro administrativo. Lo anterior es particularmente aplicable en situaciones, como la del presente caso, en que la parte reclamante no acudió oportunamente ante el foro administrativo apelativo con jurisdicción y, eventualmente, no instó oportunamente un recurso de revisión judicial para cuestionar la denegatoria de su moción de reconsideración y optó por presentar una

estrictamente de derecho y es innecesaria la pericia administrativa. 3 L.P.R.A. sec. 2173.

demanda independiente. En tales situaciones, los tribunales deben abstenerse de adjudicar aquellas controversias incluidas en la reclamación judicial cuya adjudicación está reservada al foro administrativo, ya sea por tratarse de una materia de jurisdicción exclusiva de ese foro, o porque su resolución requiere una previa intervención de la pericia administrativa, entre otras circunstancias contempladas por nuestro ordenamiento jurídico.

Con lo anterior en mente examinemos la reclamación judicial instada por Igartúa de la Rosa.

V.

La controversia relacionada a si Igartúa de la Rosa fue despojada ilegalmente de las funciones de subdirección de la Oficina Regional de Aguadilla en enero de 1993 es una controversia sobre la cual J.A.S.A.P. posee jurisdicción primaria, reteniendo los tribunales una jurisdicción revisora limitada a cuestiones de derecho y a determinar si las determinaciones de hecho se basan en evidencia sustancial. Véase, Sec. 7.14, Ley Núm. 5 de 14 de octubre de 1975; 3 L.P.R.A. sec. 1394; véanse además, Otero Martínez v. Gobernador, 106 D.P.R. 552 (1977). Esa fue precisamente la controversia específica que fue llevada ante J.A.S.A.P.[4]

J.A.S.A.P. determinó que no poseía jurisdicción sobre la reclamación. Más tarde, el foro administrativo apelativo declaró no ha lugar una moción de reconsideración presentada por la peticionaria. Igartúa de la Rosa no instó un procedimiento de revisión judicial para cuestionar esta determinación. En su lugar, optó por iniciar un procedimiento judicial independiente en el cual alegó que sus derechos civiles habían sido violados.

---

[4] La Resolución de J.A.S.A.P. mediante la cual fue desestimada la acción administrativa comienza identificando la controversia específica que fue presentada ante su consideración. Señala al respecto, que "[e]l 28 de junio de 1993, la apelante radicó apelación ante esta Junta, en la que alega que fue despojada de sus funciones como Sub-directora de la Oficina Regional de Aguadilla". Apéndice de la Petición de Certiorari, a la pág. F-148.

Al no acudir oportunamente ante los tribunales con un recurso de revisión judicial, la determinación de J.A.S.A.P. de que carecía de jurisdicción sobre su reclamación y la determinación de la autoridad nominadora sobre las funciones del cargo de carrera que ostenta Igartúa de la Rosa, adquirieron finalidad. Prudencialmente, los tribunales debemos abstenernos de considerar esta controversia específica.

Debe advertirse que no nos encontramos propiamente ante un incumplimiento con el requisito de agotar remedios administrativos, como concluyó el Tribunal de Circuito de Apelaciones. Nos encontramos, más bien, ante la situación en que la determinación administrativa adquirió finalidad. Por ello, la controversia específica relacionada a si las funciones de subdirectora de la región son inherentes a las funciones del puesto de carrera de Igartúa de la Rosa no debe ser litigada en los tribunales en esta etapa de los procedimientos.

Sin embargo, _prima facie_ la reclamación judicial no versa sobre esa controversia específica. Un examen de la demanda presentada en el foro de instancia advierte que Igartúa de la Rosa fundamenta su reclamación en que se violaron sus derechos civiles. Invoca para ello la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13-19, y la Ley de Derechos Civiles Federal, 42 U.S.C. sec. 1983, además de las disposiciones de la Ley de Personal del Servicio Público, la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico y la Primera, Quinta y Decimocuarta Enmiendas de la Constitución de Estados Unidos. En su demanda, además, alega haber sufrido persecución y humillaciones que le han generado daños, por los cuales reclama indemnización.

En esencia, alega que "ha sido hostigada, humillada y desposeída en forma continua de sus funciones, por razón de su afiliación al Partido Popular Democrático". Demanda Enmendada, a la pág. 4; Apéndice de la Petición de Certiorari, a la pág. I-175. Por ello, afirma que las actuaciones de A.D.T. configuran una situación de "persecución,

discrimen y hostigamiento" en su contra, ya que fue privada de sus funciones, las cuales, afirma, fueron asignadas a otros empleados.

Además, en febrero de 1995, Igartúa de la Rosa enmendó su demanda para incluir reclamaciones por concepto de otros eventos ocurridos en su centro de trabajo. Petición de Certiorari, Anejo I, a la pág. 172, Al respecto, indicó que ciertas actuaciones de A.D.T. posteriores a julio de 1994, con relación a los procedimientos seguidos para cubrir los puestos creados como parte de la reestructuración de esa agencia, han sido discriminatorios.[5] Asimismo, cataloga como discriminatoria la determinación del 5 de enero de 1995 de reducirle su jornada de trabajo a 3:45 horas diarias.[6]

---

[5] En su demanda enmendada, Igartúa de la Rosa indicó al respecto, lo siguiente:

   20. Que la parte co-demandada, Administración del Derecho al Trabajo[,] en cumplimiento [de] la reorganización gubernamental, ha venido realizando acciones para reducir el número de empleados de su propia agencia.
   21. Que entre las acciones administrativas que realizan las partes demandadas se encuentran [...] "traslados" y/o "destaques" de sus empleados a otras agencias o dependencias del gobierno.
   22. Que las partes demandadas están obligadas a seguir la Orden Ejecutiva emitida por el honorable Pedro Rosselló, Gobernador del Estado Libre Asociado de Puerto Rico, el 30 de septiembre de 1993, [en] la cual se adoptan las medidas para establecer procedimientos a fin de proveer oportunidades de empleo a los funcionarios públicos afectados por la reorganización gubernamental, a través del Boletín Administrativo Núm. OE-1993-45.
   [...]
   26. Que las actuaciones de las partes demandadas, en relación a la ejecución de la referida orden administrativa con la parte co-demandante, Conchita Igartúa de la Rosa, ha sido una discriminatoria y contraria a los propios procedimientos establecidos.
   27. Que las partes demandadas se encuentran realizando "traslados" y "destaques" de sus empleados; pero dichas acciones administrativas se limitan básicamente a empleados que militan en el partido actual de gobierno.

Apéndice, a la pág. 177.

[6] Señala la demanda enmendada sobre este aspecto, lo siguiente:

   34. Que con fecha del 5 de enero de 1995, la codemandante, Conchita Igartúa de la Rosa, recibió comunicación escrita del codemandado, Juan A. Martínez, donde le informa que por insuficiencia de fondos y trabajo, la jornada de trabajo u horario queda reducido a medio tiempo, o sea, [a] 3:45 horas.

Sus alegaciones presentan controversias distintas a la controversia llevada ante J.A.S.A.P. y que adquirió finalidad al no ser objeto de un oportuno recurso de revisión judicial. Es decir, no está ante los tribunales si las funciones de Subdirectora Regional son inherentes al puesto de carrera de Oficial Ejecutivo III. La controversia ante los tribunales es si la demandada A.D.T. ha violado los derechos civiles de Igartúa de la Rosa.

Además, en su demanda, Igartúa de la Rosa reclama ser indemnizada por los daños que alega haber sufrido. Sobre este aspecto, son los tribunales los que deben determinar si es acreedora a la indemnización solicitada, pues J.A.S.A.P. no está facultada en su ley habilitadora a conceder indemnización por daños. Véase, Ley de Personal del Servicio Público, supra, 3 L.P.R.A. sec. 1394.

En este contexto, al dilucidar si la serie de eventos señalados por Igartúa de la Rosa violaron sus derechos civiles, el tribunal de instancia no puede pasar juicio sobre las funciones contenidas en la OCAP-16 de la querellante. Esas son las funciones y tareas que la entidad con la pericia administrativa en asuntos de personal determinó que debían ser ejercidas por Igartúa de la Rosa y que no fueron cuestionadas oportunamente en los tribunales. Así, la finalidad de esa determinación no puede ser alterada en esta etapa de los procedimientos.

Resolvemos, por tanto, que erró el Tribunal de Circuito de Apelaciones en su determinación de la fecha exacta del inicio del término prescriptivo que tenía la peticionaria para iniciar la presente reclamación. De igual forma, resolvemos que erró al concluir que la

---

35. Que la acción anunciada por las partes demandadas no se justifica[] en lo absoluto, ya que los demandados han reclutado [personal] por el Programa de Ocupaciones Diversas que desplaza[] a los empleados regulares en sus funciones, y éstos no se ven afectados en su jornada de trabajo.

36 Que además, que la llamada austeridad es una creada por ellos mismos, para discriminar con los empleados regulares no identificados con el partido de Gobierno, pues existen otras medidas para economizar que no son utilizadas.

reclamación judicial debía ser desestimada por no haber agotado los remedios administrativos correspondientes.

En consecuencia, procede que devolvamos el caso al foro de instancia para que a tenor con nuestros pronunciamientos determine si proceden las causas de acción que Igartúa de la Rosa señala en su demanda, tanto en la originalmente presentada como en las incorporadas mediante enmienda. Sin embargo, al hacer esta evaluación el foro de instancia no podrá pasar juicio sobre la controversia específica que fue presentada ante J.A.S.A.P. y que ya advino final y firme. Además, en cuanto a las reclamaciones relacionadas a las alegaciones incluidas mediante enmienda a la demanda original, el tribunal de instancia deberá examinar si su adjudicación no requiere la previa intervención de J.A.S.A.P.

Se emitirá la correspondiente sentencia revocatoria.


                         Federico Hernández Denton
                         Juez Asociado


---

Apéndice, a la pág. 179.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Conchita Igartúa de la Rosa, et
als.
        Demandantes-Peticionario



        v.                              CC-96-2

Administración del Derecho
al Trabajo, et als.

        Demandados-Recurridos




SENTENCIA


San Juan, Puerto Rico, a 23 de diciembre de 1998.


        Por los fundamentos expuestos en la Opinión que antecede, la cual se hacer formar parte íntegra de la presente, se revoca la sentencia emitida en el caso de epígrafe por el Tribunal de Circuito de Apelaciones, Circuito Regional IV. Se devuelve el caso al Tribunal de Primera Instancia para procedimientos ulteriores compatibles con la Opinión del Tribunal.

        Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Negrón García Concurrió sin Opinión escrita. El Juez Asociado señor Corrada del Río hizo constar que "disiente por entender que la sentencia emitida por el Tribunal de Circuito de Apelaciones en el caso de autos el 9 de noviembre de 1995 es sustancialmente correcta y debe ser confirmada". El Juez Asociado señor Fuster Berlingeri no intervino.


                        Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo