EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación de Pescadores de Punta Figueras, Inc., et al. Demandantes-Peticionarios v. Marina de Puerto del Rey, Inc., et al. Demandados-Recurridos | Certiorari 2001 TSPR 174 155 DPR _____ |

Número del Caso: CC-2000-954


Fecha: 18/diciembre/2001


Tribunal de Circuito de Apelaciones:
                                   Circuito Regional VII


Juez Ponente:
                         Hon. José L. Miranda de Hostos


Abogado de la Parte Peticionaria:
                         Lcdo. Gustavo A. Quiñones Pinto


Abogado de la Parte Recurrida:
                         Lcdo. José Luis Novas Debién


Materia: Daños y Perjuicios


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Pescadores de
Punta Figueras, Inc., *et al.*

    Demandantes-Peticionarios

        v.                    CC-2000-954     Certiorari

**Marina de Puerto del Rey, Inc.,
*et al.***

    **Demandados-Recurridos**

**Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO**

**San Juan, Puerto Rico a 18 de diciembre de 2001.**

      **La Marina de Puerto del Rey, Inc. (en adelante Puerto del Rey),[1] sometió ante la consideración de la Junta de Planificación (en adelante Junta), la Consulta Número 82-24-0769-JDP, respecto a la ubicación de una marina en la Bahía Demajagua, ubicada en el Barrio Demajagua en Fajardo. Mediante Resolución de 19 de mayo de**

---

      [1] Puerto del Rey es una corporación organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada al negocio de proveer espacio de muelles y almacenamiento de embarcaciones de placer.

1983, la Junta aprobó la consulta presentada por Puerto del Rey.[2]

La consulta fue condicionada, entre otras cosas, a que se construyera una vía con una sección de once (11) metros, desde la Carretera Estatal Número 3 hasta la playa y una paralela a la zona marítimo-terrestre diseñando rampas de acceso al mar en coordinación con el Departamento de Recursos Naturales y la Corporación para el Desarrollo y Administración de los Recursos Marítimos, Lacustres y Fluviales (en adelante CODREMAR).[3] Además, Puerto del Rey debía proveer un estacionamiento público de veinte (20) espacios, el cual se destinaría a uso público al igual que las calles, ello mediante el otorgamiento de una escritura pública.[4]

La Junta requirió, además, que Puerto del Rey cediera al Estado mediante escritura pública, una franja de veinte (20.0) metros paralela a la zona marítimo-terrestre. Las escrituras públicas respecto a los terrenos a ser cedidos, a las vías a construir para dar acceso a la playa y a las áreas de estacionamiento público, deberían otorgarse previo a la concesión de permisos por la Administración de Reglamentos y Permisos (en adelante ARPE).[5]

---

[2] Anteriormente la Consulta fue denegada por la Junta mediante la Resolución emitida el 3 de febrero de 1983. El 23 de marzo de 1983, Puerto del Rey solicitó a la Junta que reconsiderara; mediante Resolución emitida el 19 de mayo la Junta aprobó la consulta. (*Véase*, Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de Certiorari, pág. 56.)

[3] *Véase*, Resolución de 19 de mayo de 1983 emitida por la Junta, Apéndice de la Petición de Certiorari, pág. 264. A tenor de la Ley Núm. 61 de 23 de agosto de 1990, art. 8, 5 L.P.R.A. sec. 1527, conocida como la Ley para el Fomento y Desarrollo de la Industria Pesquera y la Agricultura, se transfirieron al Departamento de Agricultura, Programa de Fomento, Desarrollo y Administración Pesquera, todas las funciones de CODREMAR.

[4] *Véase*, Resolución de 19 de mayo de 1983 emitida por la Junta, Apéndice de la Petición de Certiorari, pág. 264.

[5] "Los terrenos a ser cedidos al Estado tales como la franja de 20.0 metros paralela a la zona marítimo-terrestre, calles de acceso a la playa y áreas de estacionamiento público se harán [*sic*] mediante la escritura pública correspondiente previo al otorgamiento del permiso de uso para la marina y sus facilidades." *Íd*, pág. 265.

Dispuso la Junta, además, que Puerto del Rey debía dedicar a uso público cincuenta (50) espacios de atracadores de botes (*boat-slips*), para uso y disfrute de los pescadores del sector, cuya ubicación debía ser coordinada con CODREMAR.

Así las cosas, el 1 de octubre de 1986, Puerto del Rey solicitó autorización a ARPE para el desarrollo preliminar de la marina en la Bahía Demajagua. ARPE, mediante Resolución de 27 de marzo de 1987, concedió el permiso solicitado incorporando sustancialmente las condiciones impuestas por la Junta.[6] En dicha resolución, ARPE requirió, entre otras cosas: 1) que uno de los siete muelles secundarios a construirse en la marina fuera destinado a uso público para uso y disfrute de los pescadores del sector, el cual debería incluir un total de cincuenta (50) espacios para atracar botes (*boat-slips*); 2) que se construya una vía pública con una sección de once (11) metros, desde la Carretera Estatal Número 3 hasta la playa, en coordinación con el Departamento de Recursos Naturales y CODREMAR; 3) que se dedique a uso público una franja de terreno con un ancho mínimo de veinte (20) metros, paralela y medida desde la zona marítimo-terrestre.

Conforme la resolución de ARPE, la ubicación y uso de los cincuenta (50) espacios de atracadores de botes (*boat-slips*), debería ser coordinada con CODREMAR. Prohibió, además, el control de acceso u obstáculos que impidiesen el libre uso y disfrute de los pescadores a dicho muelle, por lo que se debía garantizar a perpetuidad el libre acceso de los pescadores al muelle desde la Carretera Número 3.

Posteriormente, Puerto del Rey presentó ante la consideración de ARPE un plano de desarrollo preliminar alterno. Dicho plano consistía en el rediseño parcial de las tres etapas de desarrollo

---

[6] *Véase,* Resolución de 27 de marzo de 1987, intitulada *Autorizando Desarrollo Preliminar para Proyecto de Urbanización Residencial Turístico-Comercial, así como Marina en la Bahía*

que comprende el proyecto objeto de este pleito. Mediante Resolución de 30 de mayo de 1990, ARPE aprobó el referido plano, resolución que no modificó los usos y condiciones antes indicadas.[7]

El 15 de mayo de 1996 la Asociación de Pescadores de Punta Figueras, Inc. (en adelante Asociación),[8] presentó ante el Tribunal de Primera Instancia (en adelante TPI), una acción sobre *Injunction* y Daños y Perjuicios. En síntesis, la Asociación alegó el incumplimiento de Puerto del Rey con las condiciones impuestas por ARPE, "relacionadas con el uso y disfrute de los pescadores del sector, al área de muelle y estacionamiento a ser dedicado en el proyecto a uso público para uso y disfrute de [ ] éstos."[9] Arguyó, además, que Puerto del Rey bloqueó el acceso a los pescadores y a los ciudadanos a la Playa Punta Figueras.

Mediante Demanda Enmendada, se incluyó como demandados a ARPE, al Departamento de Recursos Naturales, al Estado Libre Asociado de Puerto Rico (en adelante ELA) y al Municipio de Fajardo (en adelante el Municipio). Respecto a éstos, la Asociación alegó que le eran responsables por los daños causados por su inacción de velar por el interés público y hacer cumplir las órdenes impuestas a Puerto del Rey.

Luego de varios incidentes procesales, se depuso al Ingeniero Jorge Colón Miranda, Director de la Sección Técnica de ARPE.[10] Expresó el Ingeniero Colón Miranda que, ARPE impuso a Puerto del Rey

---

*Demajagua, en el Barrio Demajagua del Municipio de Fajardo*, Apéndice de la Petición de Certiorari, págs. 271-279.

[7] *Véase*, Resolución de 30 de mayo de 1999, titulada, *Autorizando Plano de Desarrollo Preliminar Alterno para Proyecto de Urbanización Residencial, Turístico-Comercial, así como Marina en la Bahía Demajagua, en el Barrio Demajagua del Municipio de Fajardo*, Apéndice de la Petición de Certiorari, págs. 280-289.

[8] La Asociación es una corporación sin fines de lucro organizada bajo las leyes del Estado Libre Asociado de Puerto Rico, dedicada a promover la organización y bienestar de los pescadores de la Playa Punta Figueras de Fajardo y Ceiba.

[9] Sentencia del Tribunal de Primera Instancia, Apéndice de la Petición de Certiorari, pág. 53.

dedicar a uso público para el uso y disfrute de los pescadores del sector uno de los muelles secundarios, el cual debería incluir un total de cincuenta (50) espacios para atracar botes (*boat-slips*). Señaló que, conforme al plano sometido a ARPE, el acceso a dichas facilidades es a través de una franja de terreno de ocho (8) metros que discurre desde la Carretera Estatal Número 3 hasta las facilidades destinadas a los pescadores, el varadero y la policía.

En la Conferencia con Antelación al Juicio, celebrada el 23 de abril de 1999, el TPI ordenó que las partes se reunieran el 7 de mayo de 1999, para evaluar un proyecto de escritura pública conforme a las condiciones y recomendaciones dispuestas por las agencias administrativas.

Puerto del Rey otorgó el 6 de mayo de 1999 ante el Notario Público Jorge S. Carlo Marrero, la escritura pública número siete (7) titulada *Dedicación a Uso Público del Muelle Número Sesenta y Cinco (65) y Facilidades Accesorias en la Marina Puerto del Rey de Fajardo, Puerto Rico*. Mediante la misma, Puerto del Rey dedica a uso público uno de los muelles secundarios para uso y disfrute de los pescadores, el cual provee cincuenta (50) espacios para atracar botes. Además, dedica a uso público un área para veinte (20) espacios de estacionamiento de automóviles de pescadores, ubicado en el sector sur-este de la marina. Se unió y se hizo formar parte de la escritura pública, copia de los planos del proyecto aprobados por ARPE, en los cuales se provee un acceso de ocho (8) metros de ancho que conecta la Carretera Estatal Número 3 con el estacionamiento dedicado a uso público para el uso y disfrute de los pescadores.

No obstante, la utilización de las facilidades fue condicionada al uso de pescadores *bona fide* que mantienen licencias de pesca comercial vigentes con el Departamento de Recursos Naturales y Ambientales; que las embarcaciones de los pescadores estén

---

[10] *Véase*, Deposición tomada al Ingeniero Jorge Colón Miranda, Administración de Reglamentos y Permisos, Apéndice de la Petición

debidamente inscritas para la pesca comercial con dicho departamento; y que sean utilizadas exclusivamente para la pesca comercial.

Puerto del Rey sometió ante ARPE y al Departamento de Agricultura, sucesor de CODREMAR, la escritura pública otorgada el 6 de mayo de 1999, para su aprobación, por entender que compete a éstos su aprobación.

Dada la inconformidad de la Asociación con las condiciones dispuestas en la escritura pública otorgada por Puerto del Rey, el TPI celebró una vista el 27 de octubre de 1999, en la cual las partes acordaron someter ante la consideración del tribunal sus respectivas posiciones por escrito, para así determinar si procedía dictar sentencia sumaria.  La controversia quedó delimitada por las partes de la siguiente manera: "1) Si Puerto del Rey conforme a las resoluciones y permisos emitidos por las agencias administrativas involucradas tenía la obligación de suscribir una escritura pública para dedicar a uso público, sin ningún tipo de restricción, el muelle identificado como `Muelle para uso de pescadores´, el estacionamiento identificado como `Estacionamiento para pescadores´ así como el acceso que conecta la Carretera Estatal Núm. 3 con dichas facilidades, 2) o si en la escritura a suscribir Puerto del Rey podía establecer algún tipo de restricción en el acceso a dichas facilidades."[11]

La Asociación presentó Solicitud de Sentencia Sumaria en la cual cuestionó el instrumento otorgado. Arguyó, en síntesis, que las condiciones establecidas en el instrumento público contravienen las resoluciones de ARPE.[12]

---

de Certiorari, págs. 184-220.

[11] Sentencia de 7 de abril de 2000, emitida por el TPI, Apéndice de la Petición de *Certiorari*, pág. 54.

[12] El Municipio compareció ante el TPI mediante escrito de 13 de mayo de 1999, titulado *Moción*

[12] ...continuación

Por su parte, Puerto del Rey presentó Oposición a Moción de Sentencia Sumaria. En resumen, Puerto del Rey alegó la existencia de controversias sobre hechos materiales. Solicitó al TPI que declarara no ha lugar la moción de sentencia sumaria y la imposición de honorarios de abogados a su favor.

Vistas la alegaciones de las partes, el 7 de abril de 2000, el TPI dictó Sentencia ordenando a Puerto del Rey otorgar la escritura de dedicación a uso público del Muelle Sesenta y Cinco (65) y Facilidades Accesorias en la Marina Puerto del Rey de Fajardo, sin incluir, "bajo ningún concepto, condiciones o cláusulas que [de] alguna manera creen un control de acceso u obstáculo que impida el uso y disfrute del público y de los pescadores del sector al área de muelle público."[13]

Concluyó, además, que mediante su escrito de oposición a la solicitud de sentencia sumaria, Puerto del Rey pretendía "atacar colateralmente o modificar los requisitos claramente impuestos por las agencias administrativas como condición a la autorización del proyecto que originalmente aceptaron y aprovecharon para su propio beneficio."[14]  Entendió el TPI que, Puerto del Rey estaba impedida de impugnar en dicha forma las resoluciones de la Junta y ARPE, dado que no utilizó los mecanismos provistos por dichas agencias para cuestionar las condiciones impuestas.

Inconforme con las determinaciones del TPI, el 15 de mayo de 2000, Puerto del Rey recurre ante el Tribunal de Circuito de Apelaciones (en adelante TCA), alegando que el TPI erró al dictar sentencia sumaria en su contra.  El TCA concluyó que, "[a]l momento de presentarse la demanda ante el tribunal de instancia, ni ARPE ni

_____

*Informativa y Aclarando Situación Procesal* (Apéndice de la Petición de Certiorari, págs. 356-358).  Expuso que, entendía que la escritura pública no cumplía con lo requerido por ARPE, y que por el contrario, establecía una serie de condiciones y controles que expresamente prohíbe el permiso de construcción otorgado.

[13] Sentencia de 7 de abril de 2000, emitida por el TPI, Apéndice de la Petición de Certiorari, pág. 80.

el Departamento de Agricultura habían emitido determinación alguna sobre la escritura mediante la cual Marina Puerto del Rey, pretendía cumplir con las condiciones impuestas por ARPE."[15] Colegió, además, que la solicitud del remedio interdictal ante el TPI fue prematuro, "toda vez que no se habían agotado todos los remedios administrativos."[16] Por dichas razones el TCA revocó la sentencia sumaria emitida por el TPI y dictaminó que no procedía conceder el remedio solicitado por la Asociación por falta de jurisdicción.

De la sentencia emitida el 10 de noviembre de 2000 por el TCA, recurre ante nos la Asociación, vía *certiorari*, alegando la comisión de los siguientes errores:

A. Erró el Tribunal de Circuito de Apelaciones al resolver que el Tribunal de Primera Instancia carecía de jurisdicción al dictar la sentencia sumaria objeto del presente recurso, por no haber agotado los remedios administrativos ante las agencias administrativas concernidas.

B. Erró el Tribunal de Circuito de Apelaciones al no confirmar la sentencia sumaria dictada y ampliarla a los efectos de que las Resoluciones de ARPE y condiciones impuestas por ARPE a Puerto del Rey responden a la política de interés público de que los ciudadanos de Puerto Rico tengan libre acceso a sus playas.

Mediante Resolución de 22 de diciembre de 2000, expedimos el auto de *Certiorari*. Contando con las comparecencias de las partes, resolvemos.

I

La doctrina de agotamiento de remedios administrativos es una norma de abstención judicial. *Igartúa de la Rosa v. Adm. Derecho al Trabajo*, res. el 23 de diciembre de 1998, 147 D.P.R. \_\_, 98 TSPR 170, 98 JTS 157, pág. 397. Postula que, toda parte que esté dentro de un procedimiento ante una agencia administrativa, no podrá recurrir

---

[14] *Íd.*, pág. 78.

[15] Sentencia de 7 de septiembre de 2000, emitida por el TCA, Apéndice de la Petición de Certiorari, pág. 17.

[16] *Íd.*

ante el foro judicial hasta que haya agotado todos los remedios ante la agencia. "[C]onforme esta doctrina, el foro judicial debe abstenerse hasta que concluyan los trámites administrativos." *Aurora Acevedo v. Mun. Aguadilla*, res. el 11 de abril de 2001, __ D.P.R.__, 2001 TSPR 52, 2001 JTS 54, pág. 1110; *véase Guadalupe Saldaña v. Pres. U.P.R.*, 133 D.P.R. 42, 49 (1993); *Colón Ventura v. Méndez, Dept. Recursos Naturales*, 130 D.P.R. 433, 443 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Delgado Rodríguez v. Nazario Ferrer*, 121 D.P.R. 347 (1998). Precisa que así sea, para que la agencia tenga ante sí todos los elementos del caso, y las determinaciones de ésta reflejen su decisión final para poder ser considerada por los tribunales. *Aurora Acevedo v. Mun. Aguadilla*, *supra*; *E.L.A. v. 12,974.78 Metros Cuadrados*, 90 D.P.R. 506 (1964).

Recientemente, en *Mun. Caguas v. AT&T Wireless PCS, Inc.*, res. el 18 de junio de 2001, 154 D.P.R. __, 2001 TSPR 93, 2001 JTS 96, pág. 1467, reiteramos los propósitos de dicha doctrina:

> La norma de agotamiento, pues, tiene el propósito de dilucidar cuándo es el momento apropiado para que los tribunales intervengan en una controversia que había sido previamente sometida a una intervención administrativa. *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716, 722 (1982); *E.L.A. v. 12974.78 Metros Cuadrados*, [*supra*], 513 (1964). Es decir, su objetivo es determinar la etapa en la cual el litigante en el foro administrativo puede recurrir a los tribunales. *Delgado Rodríguez v. Nazario Ferrer*, [*supra*]. . . .

El agotar todos los remedios provistos por la agencia, constituye un requisito jurisdiccional. Sin embargo, como hemos expresado en el pasado, dicho trámite administrativo puede ser preterido bajo limitadas excepciones. Éstas son: 1) que el remedio provisto por la agencia sea inadecuado; 2) que se pudiera producir un daño irreparable al promovente y en el balance de los intereses envueltos no justifique agotar los remedios administrativos; 3) que en la acción judicial se alegue la violación sustancial de derechos constitucionales; o 4) cuando el caso presenta claramente que la agencia administrativa carece de jurisdicción, entre otras. *Igartúa*

*de la Rosa v. Adm. Derecho al Trabajo*, *supra; véase además*, *Guadalupe Saldaña v. Pres. U.P.R.*, *supra*; *Colón Ventura v. Méndez, Dept. Recursos Naturales*, *supra*; *Delgado Rodríguez v. Nazario Ferrer*, *supra*; *First Federal v. Asociación*, 114 D.P.R. 426 (1983). Añade la Ley de Procedimientos Administrativos (en adelante LPAU), 3 L.P.R.A. sec. 2101 *et seq.*, que no será necesario agotar todos los remedios provistos por la agencia, "cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa." 3 L.P.R.A. sec. 2173.

Al aplicar la doctrina de agotamiento de remedios administrativos, resulta evidentemente necesario que la parte contra la cual se invoca haya participado en los procedimientos ante la agencia. Al respecto, en *Mun. Caguas v. AT&T Wireless PCS, Inc.*, *supra*, pág. 1468, expresamos lo siguiente:

> Como puede deducirse de todo lo anterior, pues, el agotamiento de remedios presupone la existencia de un procedimiento administrativo que comenzó pero que no finalizó porque la parte concernida recurrió al foro judicial antes de que se completase el procedimiento administrativo referido. Por ello, para que pueda aplicarse la doctrina de agotar remedios y proceda resolverse que la parte concernida no pueda acudir todavía al foro judicial, es menester que exista aún alguna fase del procedimiento administrativo que la parte concernida deba agotar. Sobre todo, es evidentemente necesario que la parte peticionaria ante el foro judicial sea la misma parte que participó en el procedimiento administrativo pero que no agotó la fase de éste que estaba aún pendiente.

II

Veamos si a la luz de la normativa discutida procede o no requerir a la Asociación agotar remedios administrativos.

Las reclamaciones de la Asociación se basan en el incumplimiento de Puerto del Rey con las condiciones impuestas por la Junta y ARPE, y la inercia de dichas agencias para hacer cumplir sus resoluciones. Surge de los autos que, Puerto del Rey debía otorgar las escrituras públicas previo a la concesión de permisos por ARPE, y no después, como eventualmente hizo.

Es obligación de las agencias concernidas velar porque se cumplan las condiciones por ellas impuestas al conceder permisos. En vista de la obligación de las agencias para hacer cumplir sus requerimientos, y la concurrente inacción de éstas, resulta impráctico e injusto que la Asociación recurriera ante las agencias y agotara los mecanismos y remedios ante éstas propiamente.

Incidió el TCA al concluir que la Asociación no había agotado los remedios administrativos, bajo el argumento de que "[a]l momento de presentarse la demanda ante el [TPI], ni ARPE ni el Departamento de Agricultura habían emitido determinación alguna sobre la escritura mediante la cual Marina Puerto del Rey, pretendía cumplir con las condiciones impuestas por ARPE."[17] Al presentarse la demanda era imposible que ARPE y el Departamento de Agricultura emitieran determinación alguna respecto a la escritura pública, ya que la misma fue otorgada por orden del TPI casi tres años después de la presentación de la demanda. Precisamente, la Asociación acudió ante el TPI para, entre otras cosas, exigir que Puerto del Rey otorgara la escritura pública destinando a uso público las facilidades dispuestas por ARPE.

Es doctrina reiterada que la doctrina de agotamiento de remedios administrativos, aplica en aquellos casos en que el procedimiento haya comenzado ante la agencia y que dicho cauce haya sido preterido para acudir ante un tribunal de justicia sin antes haber agotado todos los mecanismos ante la agencia. Conforme señaláramos anteriormente, precisa que así sea, para que la agencia tenga ante sí todos los elementos. *Aurora Acevedo v. Mun. Aguadilla*, *supra*.

El caso de autos no envuelve un asunto que requiriera a la Asociación acudir ante las agencias administrativas para obtener un remedio en un procedimiento en el cual no era parte. Se trata de una acción judicial para que se hagan cumplir las condiciones impuestas

por las agencias, no cuestionadas por Puerto del Rey, y que las agencias no han sido diligentes en hacerlas cumplir. Las agencias ya habían tenido ante sí el asunto, ya que fueron precisamente éstas quienes concedieron los permisos y establecieron las condiciones incumplidas, mediante resoluciones que advinieron finales y firmes.

La Asociación no fue parte del procedimiento administrativo en el cual se impuso a Puerto del Rey las condiciones aquí concernidas. A tenor de nuestras expresiones en *Mun. Caguas v. AT&T Wireless PCS, Inc.*, *supra*, es evidentemente necesario que la parte peticionaria ante el foro judicial haya participado en los procedimientos ante el foro administrativo, mediante el cual se concedieron los permisos correspondientes.

A todas luces, la doctrina de agotamiento de remedios administrativos no es de aplicación al caso de autos. Incidió el TCA al resolver que la Asociación debió agotar los mecanismos provistos por las agencias concernidas.

### III

En innumerables ocasiones hemos expresado que la revisión de este Tribunal recae sobre la sentencia misma y no contra sus fundamentos. *Pueblo v. González Vega,* res. el 16 de marzo de 1999, 99 TSPR 21, 99 JTS 27, pág. 678; *Sánchez v. Eastern Air Lines, Inc.,* 114 D.P.R. 691, 695 (1983). Ya que la doctrina de agotamiento de remedios administrativos y la de jurisdicción primaria son germanas y persiguen el mismo fin, *E.L.A. V. 12,974.78 Metros Cuadrados*, *supra*, 513, [18] precisa que determinemos si el caso de autos es gobernado por la doctrina de jurisdicción primaria.

A diferencia de la doctrina de agotamiento de remedios administrativos, la doctrina de jurisdicción primaria presupone no haberse iniciado proceso alguno por las partes ante la agencia administrativa, siendo ésta quien disfruta de la discreción o

---

[17] *Supra*, nota 15.

conocimiento especializado para entender en los asuntos planteados. Esta doctrina "tiene el propósito de determinar dónde debe instarse inicialmente una reclamación, cuando tanto una agencia administrativa como el foro judicial poseen jurisdicción concurrente sobre dicha reclamación." *Mun. Caguas v. AT&T Wireless PCS, Inc.*, *supra*; *Colón Ventura v. Méndez, Dept. Recursos Naturales*, *supra*, pág. 1468; *Aguilú Delgado v. P.R. Parking System*, *supra*.

Si las cuestiones de hecho a ser consideradas requieren el ejercicio de la discreción administrativa o aplicación del conocimiento especializado que ésta posee, la reclamación debe considerarse inicialmente por el foro administrativo correspondiente. *Ortiz v. Coop. Ahorro y* Crédito, 120 D.P.R. 253 (1987); *First Federal v. Asociación*, *supra*; *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980). "De este modo, se evita la duplicidad de esfuerzos y la posibilidad de determinaciones incompatibles y contradictorias." *Igartúa de la Rosa v. Adm. Derecho al Trabajo*, *supra*. A modo de excepción, hemos reconocido que, es el *injunction* el recurso para acudir ante el foro judicial y obviar el cauce administrativo por alegadas violaciones a derechos civiles. *Aurora Acevedo v. Mun. Aguadilla*, *supra*; *Gracia Ortiz v. Policía de Puerto Rico*, 140 D.P.R. 247 (1996); *Delgado Rodríguez v. Nazario Ferrer*, *supra*; *Pedraza Rivera v. Collazo Collazo*, 108 D.P.R. 272 (1979); *First Federal v. Asociación*, *supra*; *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977).

En aquellos casos en que se alegue el incumplimiento de las agencias con sus deberes ministeriales, toda persona tendrá disponible el recurso de *mandamus* y el recurso de *injunction* para hacer valer las obligaciones de dichas agencias. *Mun. de Loíza v. Sucesiones*, res. el 11 de junio de 2001, ___ D.P.R. ___, 2001 TSPR 84,

---

[18] *Véase, Mun. Caguas v. AT&T Wireless PCS, Inc., supra; Aguilú Delgado v. P.R. Parking System, 122 D.P.R. 261, 266 (1988).*

2001 JTS 87, pág. 1372; *Colón Cortés v. Junta de Calidad Ambiental*, res. el 2 de junio de 1999 148 D.P.R. \_\_, 99 JTS 91; *véase además*, *Misión Industrial de P.R. v. Junta de Planificación de P.R.*, res. el 29 de junio de 1998, 145 D.P.R. \_\_, 98 JTS 77, pág. 1104. Ya que el *injunction* es un remedio dinámico sobre el cual los tribunales siempre conservan su jurisdicción,[19] y a su vez el recurso apropiado para hacer valer las obligaciones de las agencias, es evidente que las personas afectadas pueden acudir ante los tribunales obviando el foro administrativo.

En el caso de autos, ARPE había concedido los permisos. La Asociación acudió ante el foro judicial para exigir que Puerto del Rey cumpliera con las condiciones impuestas, ya que la agencia permaneció inerte ante la situación y no hizo que se cumplieran sus órdenes. Las controversias y hechos planteados ante el foro judicial, no requerían la pericia de las agencias administrativas, por el contrario eran cuestiones de estricto derecho.

La Asociación acudió al TPI mediante el recurso de *injunction* para hacer cumplir las condiciones impuestas por ARPE, *inter alia*. Dicha agencia incumplió con su obligación de hacer valer las condiciones y requerimientos por ella impuestos en sus resoluciones. Conforme lo expresado anteriormente, es evidente que la Asociación no tenía que acudir ante las agencias concernidas, ya que su recurso de *injunction* se basó en el alegado incumplimiento de las agencias con sus deberes ministeriales.

Respecto a la escritura pública, la interpretación de la misma y su conformidad con las resoluciones de las agencias concernidas, no requieren conocimiento especializado de éstas. Además, resulta insólito que luego de haber transcurrido alrededor de tres años de litigación, Puerto del Rey pretenda obviar el cauce judicial y recurra ante las agencias administrativas, quienes no hicieron

---

[19] *Mun. de Loíza v. Sucesiones*, supra; *Misión Industrial de P.R. v. Junta de Planificación de P.R.*, supra; *Noriega v. Gobernador*, 122

cumplir sus propias órdenes, para que éstas determinen si la escritura pública cumplía con las condiciones impuestas y fueran aprobadas. Fue el TPI quien ordenó que se otorgara la mencionada escritura, en cumplimiento de lo requerido por las agencias, teniendo el foro judicial autoridad para determinar si ésta cumplía o no con las condiciones correspondientes. Además, las agencias fueron partes demandadas dentro del procedimiento, por lo que podían plantear ante el tribunal cualquier asunto relacionado con lo adecuado o no de la escritura.

En cuanto a la aprobación de la escritura pública por parte del Departamento de Agricultura, sucesor de CODREMAR, en ningún momento ni la Junta ni ARPE requirieron dicha aprobación. Puerto del Rey debe acudir ante el Departamento de Agricultura para determinar el uso de las facilidades, pero ello no implica que dicho departamento deba dar su aprobación a la escritura. Nótese que son dos condiciones independientes una de la otra.

Concluimos que el foro judicial posee jurisdicción en este asunto, sin que apliquen las doctrinas de agotamiento de remedios administrativos o de jurisdicción primaria. Este asunto es uno de estricto derecho y no requiere la pericia de las agencias concernidas; se trata de una acción de *injunction* para ordenar que se cumplan ciertas condiciones impuestas por las agencias, sin que éstas tomaran acción para velar por su cumplimiento, acción presentada por la Asociación, que no era parte de los procedimientos administrativos.

IV

La Asociación aduce que, el TCA erró al no confirmar la sentencia sumaria dictada por el TPI y al no ampliarla a los fines de declarar que las resoluciones de ARPE y condiciones allí impuestas responden a la política de interés publico de proveer a los ciudadanos libre acceso a las playas de Puerto Rico. Por su parte,

---

D.P.R. 650, 688 (1998).

Puerto del Rey alega que el TPI incidió al dictar sentencia sumaria, ya que a su entender existen controversias sobre hechos materiales.

La sentencia sumaria es el mecanismo procesal mediante el cual el juzgador tiene la discreción para disponer del pleito sin necesidad de celebrar vista evidenciaria. El principio rector al dictar sentencia sumaria es el sabio discernimiento del juzgador, a los fines de evitar que se despoje a un litigante de su día en corte, principio elemental del debido proceso de ley. *Consejo de Titulares v. M.G.I.C. Financial*, 128 D.P.R. 538, 548 (1991); *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613, 617 (1990).

Procede dictar sentencia sumaria, cuando no existe legítima controversia sobre hechos materiales. *Cuadrado Lugo v. Santiago Rodríguez*, 126 D.P.R. 272 (1990).[20] Este mecanismo procesal ha de utilizarse, cuando "el promovente ha establecido su derecho con claridad y ha quedado demostrado que la parte promovida no tiene derecho alguno bajo cualquier circunstancia discernible de las alegaciones que no hayan sido refutadas." *García Rivera v. Enríquez Marín*, res. el 2 de febrero de 2001, __ D.P.R. __, 2001 TSPR 12, 2001 JTS 15, pág. 820; *Pérez Rosado v. El Vocero*, res. el 11 de octubre de 1999, __ D.P.R. __, 99 TSPR 154, 99 JTS 160, pág. 266; *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714 (1986). De existir dudas respecto a la existencia de disputa de hechos materiales, el juzgador no podrá dictar sentencia de forma sumaria. *Íd.*; *PFZ Props., Inc. v. Gen Acc. Ins. Co.*, 136 D.P.R. 881 (1994).

Los hechos materiales sobre los cuales no existe controversia sustancial, deben establecerse por medio de los documentos admisibles en evidencia que el promovente acompañe a su solicitud de sentencia sumaria o de aquellos documentos que obren en el expediente del tribunal. *Pérez Rosado v. El Vocero*, *supra*; *Audio*

---

[20] *Véase*, *García Rivera v. Enríquez Marín*, res. el 2 de febrero de 2001, __ D.P.R. __, 2001 TSPR 12, 2001 JTS 15; *Pérez Rosado v. El Vocero*, res. el 11 de octubre de 1999, __ D.P.R. __, 99 TSPR 154,

*Visual Lang. v. Sist. Est. Natal Hnos.*, res. el 15 de diciembre de 1997, 144 D.P.R. ___ (1997), 97 JTS 147; *Mercado Vega v. U.P.R.*, 128 D.P.R. 273, 281 (1991); *Nassar Rizek v. Hernández*, 123 D.P.R. 360, 378 (1989); *Corp. Presiding Bishop CJC of LDS v. Purcell*, *supra*. De ahí que, la parte promovida deba presentar documentos con igual valor probatorio a la presentada por la parte promovente para establecer una genuina disputa sobre los hechos materiales del caso. *PFZ Props., Inc. v. Gen Acc. Ins. Co.*, *supra*; *Corp. Presiding Bishop CJC of LDS v. Purcell*, *supra*.

Ante el TPI, las controversias quedaron delimitadas por las partes **a si Puerto del Rey podía o no, establecer algún tipo de restricción en la escritura pública a suscribir para dedicar a uso público las facilidades en beneficio de los pescadores del área. Por ende, a los efectos de este recurso nos corresponde determinar si el TPI actuó correctamente al dictar sentencia sumaria.**

Conforme sostuviéramos, el juzgador ante una solicitud de sentencia sumaria debe disponer de ella considerando los documentos que acompañan la solicitud o los que obren en el expediente del tribunal. El TPI basó su decisión en las resoluciones de las agencias y los planos presentados por Puerto del Rey.

Por su parte, Puerto del Rey alega la existencia de hechos materiales en controversia.[21] Sin embargo, los documentos

---

99 JTS 160; *Pilot Life Ins. Co. v. Crespo Martínez*, 136 D.P.R. 624 (1994).

[21] Sin embargo, los hechos alegados por Puerto del Rey, no son materiales a las controversias según fueron

                                                        continúa...

[21] ...continuación

delimitadas por las partes. En síntesis, Puerto del Rey señaló que, la Asociación alegó en su solicitud de sentencia sumaria que Puerto del Rey estaba obligada a ceder su propiedad; mientras que la aquí peticionaria entiende que sólo debe dedicarlas a uso público sin transferir su titularidad, lo cual a su entender representa una controversia de hechos materiales. Conforme señaláramos anteriormente, la controversia quedó delimitada a si Puerto del Rey podía o no, establecer algún tipo de restricción en la escritura pública a suscribir para **dedicar a uso público** las facilidades en beneficio de los pescadores del área, sin que estuviera envuelta la cuestión de titularidad.

considerados por el TPI demuestran que no existe controversia sustancial respecto a los hechos materiales relacionados a los asuntos delimitados por las partes.

Entendemos que el TPI actuó correctamente al determinar que Puerto del Rey tenía la obligación de otorgar la escritura pública para dedicar a uso público y sin limitación alguna las facilidades en beneficio de los pescadores. Su determinación está claramente sostenida por las resoluciones de las agencias aquí concernidas y por los planos que Puerto del Rey sometiera ante éstas. El redactar la escritura pública conforme las determinaciones del TPI, en nada interfiere con las funciones y obligaciones de las agencias concernidas. Por el contrario, permitir que dicha escritura sea suscrita bajo las limitaciones pretendidas por Puerto del Rey, soslaya la orden de ARPE en cuanto a que el Departamento de Agricultura coordine junto a Puerto del Rey el uso de las facilidades.

## V

Por las razones que anteceden, se dictará sentencia revocando la sentencia emitida por el Tribunal de Circuito de Apelaciones, y confirmando la emitida por el Tribunal de Primera Instancia conforme a lo aquí expresado.

Se devolverá el caso al Tribunal de Primera Instancia a los fines de concluir con los trámites ulteriores a esta decisión.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
JUEZ ASOCIADO

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación de Pescadores de
Punta Figueras, Inc., *et al.*

  Demandantes-Peticionarios

            v.               CC-2000-954     Certiorari

**Marina de Puerto del Rey, Inc.,
*et al.***

  **Demandados-Recurridos**

**SENTENCIA**

**San Juan, Puerto Rico a 18 de diciembre de 2001.**

     **Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta sentencia revocando la sentencia emitida por el Tribunal de Circuito de Apelaciones, y se confirma la emitida por el Tribunal de Primera Instancia conforme a lo aquí expresado.**

     **Se devuelve el caso al Tribunal de Primera Instancia a los fines de concluir con los trámites ulteriores a esta decisión.**

     **Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita.**

                                 **Carmen E. Cruz Rivera
          Secretaria del Tribunal Supremo Interina**