EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de la Procuradora del Paciente<br>    Agencia-Peticionaria<br><br>vs.<br><br>Aseguradora MCS, IPA 603<br>    Promovida<br><br>MCS Health Management Options Inc.<br><br>Recurrida | Certiorari<br><br>2004 TSPR 153<br><br>162 DPR _____ |

Número del Caso: CC-2004-356

Fecha: 22 de septiembre de 2004

Tribunal de Circuito de Apelaciones:

                    Circuito Regional I San Juan

Panel integrado por su Presidente, el Juez Gierbolini, el Juez Cordero y el Juez Rodríguez Muñiz.

Oficina del Procurador General:

                    Lcdo. Guillermo A. Mangual Amador
                    Procurador General Auxiliar

Abogados de la Parte Recurrida:

                    Lcdo. Israel Santiago Lugo
                    Lcda. Awilda M. Broco Rodríguez

Materia: Revisión Administrativa procedente de la Oficina de la
          Procuradora del Paciente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de la Procuradora del
Paciente

     Agencia-Peticionaria

       vs.

Aseguradora MCS, IPA 603

     Promovida

MCS Health Management Options
Inc.

     Recurrida

CC-2004-356     CERTIORARI

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓEPZ

San Juan, Puerto Rico, a 22 de septiembre de 2004

La Oficina de la Procuradora del Paciente Beneficiario de la Reforma de Salud --en adelante "Oficina de la Procuradora"-- inició una investigación a raíz de un reportaje publicado en la prensa en torno a ciertos problemas que enfrentó la madre de una menor paciente de cáncer para recibir servicios especializados a través de la Reforma de Salud. La mencionada investigación fue realizada por la división de investigación y querellas de la aludida agencia gubernamental.

De la investigación realizada por dicha división se determinó, en síntesis y en lo aquí

pertinente, que la recurrida MCS Health Management Options, Inc. --en adelante "MCS"-- incumplió con su obligación de informar y orientar a la madre de la menor asegurada acerca de sus derechos y de los procedimientos para obtener referidos a especialistas, conforme se dispone en la Carta de Derechos y Responsabilidades del Paciente, Ley Núm. 194 de 25 de agosto de 2000, 24 L.P.R.A. sec. 3041, *et seq.*

Como resultado de la referida investigación, la Oficina de la Procuradora emitió una orden, fechada 12 de marzo de 2003, donde requirió de MCS que sometiera, para la aprobación de ésta, un plan de acción que asegurase la implantación de los siguientes procedimientos: i) procedimiento para autorización de referidos a especialistas para evitar referidos tardíos, ii) procedimiento para autorizar estudios especializados, pruebas diagnósticas y cubierta especial que incluyera la existencia y mantenimiento del registro de dichos servicios, iii) procedimiento establecido para admisiones de emergencia en aquellos casos que llegan al consultorio médico y iv) procedimiento establecido para admisiones electivas.

Como parte de la orden notificada por la Oficina de la Procuradora, se le apercibió a MCS de su derecho a solicitar, dentro del plazo de quince (15) días, contado el mismo a partir del recibo de la orden, una vista administrativa o, en su lugar, enviar por escrito sus

alegaciones y prueba para sostener la improcedencia de la acción tomada. De igual forma, se le apercibió de su derecho a comparecer asistido por abogado, así como de presentar evidencia. La referida orden no impuso, ni advirtió, sobre penalidades o sanciones administrativas de ningún tipo.

Así las cosas, MCS presentó una "Moción de Desestimación" ante la Oficina de la Procuradora dentro del plazo provisto para solicitar vista administrativa. En la misma argumentó que las actuaciones de la Oficina de la Procuradora, referentes a la investigación de la querella y la orden emitida, fueron realizadas en forma *ultra vires* y en violación al debido proceso de ley; ello en vista de que en el presente caso la aludida agencia alegadamente actuó sin haber antes promulgado un reglamento que delimitara los procedimientos y derechos de las partes, según requerido por su ley habilitadora. De esta forma, MCS solicitó de la Oficina de la Procuradora que desestimara la acción incoada en su contra y que dejase sin efecto la orden emitida el 12 de marzo de 2003.

La Oficina de la Procuradora, mediante escrito a esos efectos, rebatió la moción de desestimación radicada por MCS. En el referido escrito dicha agencia aceptó que no se había promulgado un reglamento que rigiera los procedimientos adjudicativos que se celebran ante sí. Sin embargo, argumentó que ello no era motivo para declarar sus actuaciones *ultra vires*, toda vez que éstas estuvieron

amparadas en su estatuto habilitador y que, en el presente caso, ésta brindó a MCS todas las garantías del debido proceso de ley de conformidad con la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101, *et seq.*, y nuestro ordenamiento constitucional. Arguyó, además, que el cumplir con las aludidas garantías, lo cual ésta había hecho, era precisamente lo que se buscaba al requerir que las agencias con poderes adjudicativos promulgasen reglamentos.

La aseguradora MCS presentó una "oposición" a la réplica a su moción de desestimación radicada por la Oficina de la Procuradora. Adujo, en síntesis, que su reclamo sobre la violación al debido proceso de ley se refería, no sólo a la vertiente procesal de dicha garantía, sino además a su vertiente sustantiva. Así pues, planteó que la Oficina de la Procuradora, al no aprobar un reglamento que delimitase las obligaciones de los proveedores y aseguradoras de la Reforma de Salud, hacía imposible que dichas entidades conocieran las actuaciones u omisiones que constituyen una violación de ley.

En respuesta a esta última oposición, la Oficina de la Procuradora presentó un escrito titulado "Tríplica a 'Oposición a Moción en Réplica a Moción de Desestimación'". Mediante el mismo, la referida agencia arguyó que el planteamiento de MCS referente al debido proceso de ley sustantivo carecía de méritos, ello en

vista de que la Ley Orgánica de la Oficina de la Procuradora claramente establecía las obligaciones y deberes de los proveedores y aseguradoras de servicios de salud médico-hospitalarios para con los pacientes de la Reforma de Salud. Finalmente, la Oficina de la Procuradora dictó una orden mediante la cual declaró "no ha lugar" la moción de desestimación presentada por MCS. Además, señaló Conferencia Sobre el Estado de los Procedimientos para el 12 de agosto de 2003.[1]

Inconforme con tal dictamen, MCS acudió, mediante recurso de revisión, ante el Tribunal de Apelaciones. Alegó, en síntesis, que la Oficina de la Procuradora incidió al determinar que sus actuaciones referentes a la investigación y orden emitida en el presente caso fueron correctas y no violatorias del debido proceso de ley, no obstante dicha Oficina carecer de un reglamento que delimitara su autoridad y definiera los criterios bajo los cuales se investigarían violaciones a la Carta de Derechos y Responsabilidades del Paciente.[2]

---

[1] El 5 de agosto de 2003 la querellada MCS presentó una moción de reconsideración ante la Oficina de la Procuradora. En cuanto a esta moción, el 7 de agosto de 2003, la referida Oficina emitió una orden en la que dictaminó "Nada que proveer".

[2] Sostuvo, además, que dicha agencia erró "al no incluir en su resolución final sobre la Moción de Desestimación las determinaciones de hechos y conclusiones de derecho exigidas por la Ley de Procedimiento Administrativo Uniforme". Véase página 4 del Anejo I de la Petición de *Certiorari* radicada por la Oficina de la Procuradora.

La Oficina de la Procuradora solicitó la desestimación del Recurso de Revisión, alegando: i) que el foro apelativo intermedio carecía de jurisdicción para revisar la decisión administrativa en cuestión debido a que se trataba de una orden de naturaleza parcial y no se configuró la única excepción reconocida a la exigencia de que únicamente las revisiones u ordenes finales de las agencias administrativas son revisables, esto es, cuando resulta clara la falta de jurisdicción de la agencia y ii) que el recurso radicado era académico toda vez que MCS, alegadamente, había sometido a la Oficina de la Procuradora la documentación que esta última le requirió mediante la orden que se intentaba revisar.

MCS se opuso a la solicitud de desestimación del recurso de revisión presentada por la Oficina de la Procuradora, alegando, en síntesis, que si bien era cierto que había sometido cierta documentación a la Oficina de la Procuradora, ello se hizo con el entendimiento de que no estaba renunciando al derecho de continuar con el recurso de revisión y, además, que no sometió toda la documentación requerida por la Oficina de la Procuradora. Argumentó, además, que aun cuando la resolución cuya revisión se solicitaba era una de naturaleza parcial, el planteamiento era uno de índole constitucional que no requería de la pericia administrativa. Por tal razón, arguyó que no era necesario agotar los remedios

administrativos.[3] El Tribunal de Apelaciones emitió una resolución denegatoria de la moción de desestimación presentada por la Oficina de la Procuradora, concediendo a dicha parte el término de treinta (30) días para presentar su alegato.

Inconforme con dicho proceder, la Oficina de la Procuradora recurrió ante este Tribunal, vía recurso de *certiorari*, imputándole al Tribunal de Apelaciones haber errado al:

> ...denegar la Solicitud de Desestimación porque dicho foro carece de jurisdicción para revisar una decisión administrativa de naturaleza parcial emitida por la Oficina de la Procuradora del paciente, ello en virtud de la norma estatutaria que sólo permite que se inste recurso de revisión judicial una vez la agencia emite una orden o resolución final, sin que esté presente, en este caso, la única excepción reconocida a dicha norma (cuando la agencia claramente carece de jurisdicción para atender el asunto ante sí).

> ...denegar la Solicitud de Desestimación predicada en la academicidad de la controversia planteada en el recurso de revisión administrativa presentado por MCS, a pesar de haberse argumentado y evidenciado que la parte co-promovida recurrida cumplió con la orden cuya validez impugnó en alzada al someter los documentos requeridos por la Oficina de la Procuradora del Paciente mediante su Orden de 12 de marzo de 2003, a los fines de que éstos fuesen evaluados de conformidad con los propósitos de la pesquisa realizada por la agencia.[4]

---

[3] El 30 de enero de 2004, la Oficina de la Procuradora replicó la oposición a la solicitud de desestimación radicada por MCS. En respuesta, MCS presentó un escrito titulado "Dúplica a 'Réplica a Oposición a Solicitud de Desestimación del Recurso de Revisión'".

[4] Nos limitamos a resolver el primer señalamiento de error planteado ante nos en vista de que la Oficina de la

**(Continúa . . .)**

Atendida la petición de *certiorari*, le concedimos veinte (20) días a la parte recurrida para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la resolución emitida por el Tribunal de Apelaciones. Contando con la comparecencia de las partes, y estando en condición de resolver el recurso, procedemos a así hacerlo.

I

A

La Oficina de la Procuradora del Paciente Beneficiario de la Reforma de Salud es una entidad creada mediante la Ley Núm. 11 de 11 de abril de 2001, mejor conocida como la "Ley Orgánica de la Oficina del Procurador del Paciente Beneficiario de la Reforma de Salud", ante.

La referida disposición estatutaria le impone a la Oficina de la Procuradora la responsabilidad de "garantizarle a los pacientes beneficiarios de la Reforma de Salud el cumplimiento de la Carta de Derechos y Responsabilidades del Paciente..." y de "atender y solucionar los problemas, necesidades y reclamos de dichos pacientes asegurados...." 3 L.P.R.A. sec. 1982.

---

Procuradora no nos ha puesto en posición de evaluar el planteamiento de error referente a la academicidad.

Por su parte, la mencionada Carta de Derechos y Responsabilidades del Paciente está consagrada en la Ley Núm. 194 de 25 de agosto de 2000, 24 L.P.R.A. sec. 3041, *et seq*. (en adelante "Carta de Derechos"). Mediante esta pieza legislativa se establecieron los derechos de todo paciente, usuario o consumidor de servicios y facilidades de salud médico-hospitalarias. De particular importancia al caso de autos, en dicha Ley se estableció que éstos tienen derecho a:

> [r]ecibir información cierta, confiable, oportuna y suficiente, de fácil comprensión y adecuada a sus necesidades, con relación a sus planes de seguro de salud y a las facilidades y profesionales de salud que haya seleccionado o cuyos servicios solicite, de manera que esté en condiciones de tomar decisiones bien informadas e inteligentes en cuanto a su selección de planes, facilidades y profesionales y en cuanto a los servicios de salud que requiere. 24 L.P.R.A. sec. 3043.

La citada Carta de Derechos establece, además, que todo paciente tiene derecho a recibir información referente a "los procedimientos que gobiernan el acceso a especialistas y servicios de emergencia...." *Ibid*.[5] A los

---

[5] De igual forma, en el Artículo 17 de la Carta de Derechos y Responsabilidades del Paciente, 24 L.P.R.A. sec. 3055, se establece que todo paciente, asegurado, usuario o consumidor de servicios puede presentar una querella administrativa ante el Departamento de Salud cuando entienda que se le han violado derechos bajo la referida legislación. Asimismo, dicho Artículo ejemplifica los asuntos que pueden ser motivo para la radicación de una de estas querellas. Entre los motivos que detalla para la presentación de una querella está el que "[u]na entidad aseguradora no le inform[e] al paciente los servicios de salud cubiertos por su plan de cuidado de salud...." 24

**(Continúa . . .)**

fines de llevar a cabo las funciones asignadas a la Oficina de la Procuradora por su ley habilitadora, la misma creó el cargo de Procuradora del Paciente Beneficiario de la Reforma de Salud (en adelante "Procuradora"), atribuyéndole a ésta ciertas facultades y deberes.[6] Entre éstas, la Procuradora tiene la facultad y el deber de "[p]rocesar querellas presentadas por los pacientes, sus padres o tutores, relacionadas con las entidades privadas y agencias públicas que son proveedores y que prestan servicios de salud, así como contra las entidades aseguradoras a quienes se les ha pagado la prima correspondiente a dichos pacientes." 3 L.P.R.A. sec. 1985.

La aludida pieza legislativa faculta a la Procuradora a solicitar informes sobre quejas y querellas tanto de las aseguradoras como de la Administración de Seguros de Salud, a celebrar vistas administrativas conforme a las disposiciones de la Ley de Procedimiento Administrativo

_____

L.P.R.A. sec. 3055. Cabe recalcar que la citada Carta de Derechos se hizo parte de la Ley Orgánica de la Oficina de la Procuradora.

[6] Según su Exposición de Motivos, esta Ley tiene como propósito el crear el cargo del Procurador del Paciente Beneficiario de la Reforma de Salud. Así pues, se dispuso que dicho funcionario tendría la responsabilidad de velar por los derechos de los pacientes que reciben los servicios de salud contratados por el Gobierno del Estado Libre Asociado de Puerto Rico, según éstos se exponen en la Ley Núm. 194 de 25 de agosto de 2000, mejor conocida como la "Carta de Derechos y Responsabilidades del Paciente". Véase: Leyes de Puerto Rico, 2001, Parte 1, pág. 59.

Uniforme[7], a tomar juramento y declaraciones por sí o por sus representantes, a inspeccionar instalaciones, emitir órdenes para la comparecencia de testigos y a requerir la presentación de documentos pertinentes a una investigación o querella ante su consideración. Véase: 3 L.P.R.A. sec. 1985 (h)a(l).

El Artículo 7 de la Ley Orgánica de la Oficina de la Procuradora, ante, dispone que la Procuradora, en aquellos casos en que decida investigar una querella, deberá notificarlo a la agencia pública o a la entidad privada querellada, según fuere el caso, expresando los hechos alegados en la misma y la ley que le confiere potestad para investigar. Véase: 3 L.P.R.A. sec. 1988.

La referida Ley, además, ordena a la Oficina de la Procuradora la promulgación de un reglamento para fines de su funcionamiento interno y para la implantación de dicha Ley. En específico, esta pieza legislativa dispone que el reglamento detallará expresamente los deberes y obligaciones que dicha ley impone a los aseguradores, facilidades médico hospitalarias y proveedores.

B

---

[7] Ley Núm. 170 de 12 de agosto de 1988, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico".

Conforme establece el Artículo 4.006 de la Ley de la Judicatura de 2003[8], el Tribunal de Apelaciones tendrá competencia para revisar las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas.[9]

Es de notar, por otro lado, que la Ley Orgánica de la Oficina de la Procuradora prescribe que la revisión de una orden o resolución emitida por dicha Oficina se llevará a cabo de acuerdo a las disposiciones de la Ley de Procedimiento Administrativo Uniforme, ante. La Sección 4.2 de la referida Ley de Procedimiento Administrativo Uniforme[10] establece, en lo aquí relevante, que:

> Una parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una

---

[8] Ley Núm. 201 de 22 de agosto de 2003.

[9] A esos efectos, el Inciso (c) del referido Artículo específicamente dispone, en lo aquí pertinente, que:

> Mediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. En estos casos, la mera presentación del recurso no paralizará el trámite en el organismo o agencia administrativa ni será obligatoria la comparecencia del Estado Libre Asociado ante el foro apelativo a menos que así lo determine el tribunal. El procedimiento a seguir será de acuerdo con lo establecido por la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". (énfasis suplido).

[10] Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. sec. 2101, *et seq.*.

> solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título....
> ....
> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. 3 L.P.R.A. sec. 2172.

De lo antes expuesto se puede colegir que son dos los requisitos para que una orden emitida por una agencia pueda ser revisada ante el Tribunal de Apelaciones. Éstos son: i) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia y ii) que la resolución sea final y no interlocutoria. Pasemos a analizar cada uno de estos requisitos por separado.

C

La doctrina de agotamiento de remedios administrativos es una norma de autolimitación judicial de carácter fundamentalmente práctico. Mediante ella, los tribunales discrecionalmente se abstienen de revisar una actuación de una agencia hasta tanto la persona afectada agota todos los remedios administrativos disponibles, de forma tal que la decisión administrativa refleje la posición final de la entidad estatal. Guadalupe v.

Saldaña, Pres. U.P.R., 133 D.P.R. 42 (1993); Rivera v. E.L.A., 121 D.P.R. 582, 593 (1988). El propósito de la doctrina es determinar la etapa en la cual el litigante puede recurrir a los tribunales, evitando así una intervención judicial innecesaria y a destiempo que interfiera con el cauce y desenlace normal del proceso administrativo. Guadalupe v. Saldaña, Pres. U.P.R., ante; Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 354-55 (1988).

En torno a los fundamentos aludidos en apoyo a la referida doctrina, en Rivera v. E.L.A., ante, a la pág. 595, reiterado en Guadalupe v. Saldaña, Pres. U.P.R., ante, señalamos que con ésta se logra:

> 1.) que la agencia concernida, antes de la intervención judicial, pueda desarrollar un historial completo del asunto ante su consideración; 2.) que la agencia pueda utilizar el conocimiento especializado de sus funcionarios para adoptar las medidas correspondientes de conformidad con la política pública formulada por la entidad; y 3.) que la agencia pueda aplicar uniformemente sus poderes para poner en vigor las leyes, rectificar oportunamente sus errores o reconsiderar el alcance de sus pronunciamientos.

En términos generales, la determinación de la aplicación de la referida doctrina depende del balance entre los factores que operan a favor y en contra de la revisión judicial. Algunos de los factores que inclinan la balanza a favor de la preterición del requisito de agotamiento son: i) que el dar curso a la acción administrativa haya de causar un daño inminente, material,

sustancial y no teórico o especulativo, ii) que el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado, Vda. De Iturregui v. E.L.A., 99 D.P.R. 488, 491 (1970), (iii) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado o iv) el asunto es estrictamente de derecho.[11] A esos efectos, la Sección 4.3 de la Ley de Procedimiento Administrativo Uniforme señala que:

> [e]l tribunal podrá relevar a un peticionario de tener que agotar alguno o todos los remedios administrativos provistos en el caso de que dicho remedio sea inadecuado; o cuando el requerir en el balance de intereses no se justifica agotar dichos remedios, o cuando se alegue la violación sustancial de derechos constitucionales; o cuando sea inútil agotar los remedios administrativos por la dilación excesiva en los procedimientos; o cuando sea un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 L.P.R.A. sec. 2173.

Sobre este asunto, en Guadalupe v. Saldaña, Pres. U.P.R., ante, señalamos que corresponde a la parte que pretende acudir al foro judicial probar, mediante hechos específicos y bien definidos, que se debe prescindir de los remedios administrativos. Véase, además: Rivera v. E.L.A., ante, a la pág. 596.

---

[11] Véanse: Guadalupe v. Saldaña, Pres. U.P.R., ante; Rivera v. E.L.A., ante, a la pág. 596; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 722 (1982); Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2173.

En lo referente a las excepciones a la doctrina sobre agotamiento de remedios, en Mercado Vega v. U.P.R., 128 D.P.R. 273 (1991), reiteramos que la impugnación constitucional de actuaciones administrativas está sujeta a dicha norma y a lo resuelto en First Fed. Savs. V. Asoc. De Condómines, 114 D.P.R. 426 (1983), a los efectos de que "[e]l mero hecho de invocar una cuestión constitucional no margina automáticamente el proceso administrativo. Aunque es a los tribunales a quienes compete toda interpretación constitucional, ello no implica que una simple alegación al efecto excluya el foro administrativo". Expresamos, por último, en Mercado Vega v. U.P.R., ante, a la pág. 286, que "es doctrina firmemente establecida, que para que proceda un reclamo por la violación de un derecho garantizado constitucionalmente, a los fines de eludir el cauce administrativo, es necesario que se demuestre la existencia de un agravio de patente intensidad que justifique desviarse del mencionado cauce." (énfasis nuestro).

Por otro lado, y en cuanto a la excepción referente a cuestiones de derecho, este Tribunal ha resuelto que la misma se refiere a situaciones de interpretación estatutaria en la que los tribunales son los expertos, es decir, cuando se trata de situaciones estrictamente de derecho. Sobre este particular, en Adorno Quiles v. Hernández, 126 D.P.R. 191 (1990), este Tribunal se enfrentó a una controversia que giraba en torno a la

validez de un contrato suscrito entre una manejadora de boxeadores y un boxeador. En el citado caso, el boxeador acudió ante la Comisión de Boxeo Profesional de Puerto Rico (en adelante "Comisión") para que ésta invalidara el referido contrato. Durante la vista administrativa ante la Comisión, el abogado de la manejadora impugnó la jurisdicción de la Comisión y, al día siguiente, acudió al Tribunal de Primera Instancia para que declarara válido el contrato. El boxeador, por su parte, solicitó que se desestimara la acción incoada ya que, según adujo, no se agotaron los remedios administrativos. Este Tribunal determinó que, siendo la controversia una de índole contractual y estrictamente de derecho, se podía obviar el cauce administrativo y acudir directamente a los tribunales.

De igual forma, en <u>Asociación de Pescadores de Punta Figueras, Inc. v. Marina del Puerto del Rey</u>, res. el 18 de diciembre de 2001, 2001 TSPR 174, reiteramos que cuando se trata de cuestiones estrictamente de derecho, no hay que agotar los remedios administrativos. En el referido caso, la Asociación de Pescadores de Punta Figueras, Inc., presentó ante el Tribunal de Primera Instancia una acción de interdicto y daños y perjuicios. Dicha acción buscaba que se le ordenara a Puerto del Rey el cumplir con ciertos requisitos impuestos por ARPE cuando ésta le concedió a la mencionada entidad los permisos para construir una marina en Fajardo. En dicho caso determinamos que el hecho de que

ARPE ya había otorgado los permisos y de que la acción judicial buscaba el exigir que se cumplieran con las condiciones impuestas al otorgarse dichos permisos, convertían la controversia en una estrictamente de derecho que no requería la pericia de la agencia y, por lo tanto, no era de aplicación la doctrina de agotamiento de remedios.

D

Debe recalcarse, con relación a la exigencia de que el Tribunal de Apelaciones sólo podrá revisar aquellas órdenes o resoluciones finales de una agencia, que este Tribunal ha resuelto que, aun cuando dicho requisito es diferente a la doctrina de agotamiento de remedios, ambas doctrinas tienen un alcance análogo y que, de ordinario, ambas gozan de las mismas excepciones. Véase: Junta Examinadora de Tecnólogos Médicos v. Anneris Elías, 144 D.P.R. 483 (1997)[12]. En dicho caso examinamos las diferentes instancias en que es factible preterir el cauce administrativo en situaciones tales como: cuando la agencia carece de jurisdicción y la posposición

---

[12] De igual forma, en el ámbito federal, de donde proviene nuestra legislación, se ha reconocido que la doctrina sobre agotamiento de remedios y la exigencia de que sólo las resoluciones finales son revisables se basan en los mismos fundamentos. Véanse: Mc Kart v. United States, 395 U.S. 185, 194 (1969); Rosenthal & Company v. Commodity Futures Trading Commission, 614 F. 2d 1121, 1124 (1980). Véase, además: Scwartz, Bernard, Administrative Law: a casebook, Fourth Edition, Aspen Law & Business, pág. 761.

conllevaría un daño irreparable o cuando el asunto es estrictamente de derecho. De hecho, en el referido caso permitimos la revisión de una orden interlocutoria en vista de la clara falta de jurisdicción de la agencia.

Luego de la decisión emitida en Junta Examinadora de Tecnólogos Médicos, ante, la Asamblea Legislativa aprobó la Ley Núm. 186 de 26 de diciembre de 1997. Mediante la misma se añadió un párrafo adicional a la Sección 4.2 de la Ley de Procedimiento Administrativo Uniforme. Se legisló para que dicha Sección especificara que "[u]na orden o resolución interlocutoria de una agencia no es revisable directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia." 3 L.P.R.A. sec. 2172.

Ello no obstante, se puede argumentar que dicha actuación legislativa no tuvo la intención, o propósito, de variar la norma jurisprudencial antes mencionada. Ello en vista del hecho de que: en la Exposición de Motivos de la citada disposición estatutaria no se hace mención del caso de Junta Examinadora de Tecnólogos Médicos v. Anneris Elías, ante, y, además, que en la misma se expresa que "[e]sta medida no cambia, altera o modifica el estado de derecho vigente".[13] Ello da la fuerte impresión de que la doctrina establecida en Junta Examinadora de Tecnólogos

---

[13] Véase: Leyes de Puerto Rico, 2001, Parte 1, pág. 59.

Médicos v. Anneris Elías, ante, --en torno a las excepciones al requisito de finalidad de las resoluciones de las agencias para que éstas sean revisables-- continúa vigente.

Como es sabido, nuestra Ley de Procedimiento Administrativo Uniforme proviene de la jurisdicción norteamericana.[14] Aun cuando en el ámbito federal las cortes no han establecido definitivamente si la exigencia de finalidad de las resoluciones administrativas --para que éstas sean revisables-- es un segmento de la doctrina de agotamiento de remedios, parte del tema sobre madurez, o un tercer tema separado, lo que sí se ha establecido con certeza es que dicha exigencia tiene excepciones. Con relación a estas excepciones, el tratadista Kenneth Kulp Davis, en su tratado de Derecho "Administrative Law Treatise"[15] señala que las cortes norteamericanas han evaluado el tema sobre la revisión de resoluciones interlocutorias caso a caso.

A manera de ejemplo, en Rosenthal & Company v. Commodity Futures Trading Commission, 614 F. 2d 1121,

---

[14] Sobre este particular, la Ley Núm. 170 de 12 de agosto de 1988, (LPAU) fue adoptada siguiendo el modelo del "Administrative Procedure Act" (APA), 5 U.S.C. sec. 551, et. seq., y del "Model State Administrative Procedure Act". Véase: Asociación de Maestros de Puerto Rico v. Comisión de Relaciones del Trabajo del Servicio Público de Puerto Rico, res el. 31 de marzo de 2003, 2003 TSPR 47; Piñero v. A.A.A., 146 D.P.R. 890 (1998).

[15] K.C. Davis, Administrative Law Treatise, Second Edition, K.C. Davis Pub. Co., California, Vol. 4, 1983, sec. 26:10.

1127-28 (7th Cir. 1980), la Corte de Apelaciones Federal para el Séptimo Circuito resolvió que la peticionaria, Rosenthal & Company, había fallado al demostrar cómo la posposición de la revisión judicial --hasta tanto la Comisión emitiera una resolución final-- le causaría a ésta el menoscabo de derechos importantes. A esos efectos, el referido tribunal indicó lo siguiente:

> Rosenthal, however, has not suggested how postponing judicial review until the entry of a final administrative order against it would cause it to lose any important rights. Virtually all of its claims, if sustained, would be valid grounds for upsetting any reparation order that may be entered against it. Thus, apparently the only injury which Rosenthal would suffer by the failure to obtain judicial review now would be the cost and inconvenience of defending against the claim at an administrative hearing. It is clear, however, that the litigation expense and attendant inconvenience do not constitute irreparable injury sufficient to justify judicial intervention into pending agency proceedings. In essence, Rosenthal seeks to have this court review an interlocutory order much like the denial of a motion to dismiss. Such agency actions are ordinarily not appealable and whatever expense and inconvenience Rosenthal may suffer are outweighed by the danger of disrupting ongoing administrative proceedings by piecemeal review.

De igual forma, en Gulf Oil Corp. V. United States, 663 F. 2d 296 (D.C. Cir., 1981), unos productores de aceite crudo demandaron en sentencia declaratoria e interdicto ante el Tribunal de Distrito Federal para el Distrito de Columbia, ello mientras se realizaba un procedimiento administrativo ante el Departamento de Energía de los Estados Unidos por razón de alegadas

violaciones de ley por parte de los mencionados productores. En la referida demanda se arguyó que los funcionarios a cargo del procedimiento administrativo ante el Departamento de Energía habían incurrido en destrucción de documentos y en una serie de comunicaciones impropias. El Departamento, por su parte, argumentó que la aludida corte de distrito carecía de jurisdicción para entender en el recurso, esto debido a que los demandantes no habían agotado los remedios administrativos ni su caso se encontraba maduro para verse ante los tribunales, por la agencia envuelta no haber emitido una resolución final.

En dicho caso, la Corte de Apelaciones Federal para el Circuito del Distrito de Columbia determinó que la revisión de órdenes interlocutorias, así como la intervención de las cortes antes que finalice un procedimiento administrativo, deben ser la excepción y no la regla. A esos efectos, la referida corte indicó que el permitir la revisión de resoluciones interlocutorias sólo procedía en instancias en que derechos sustanciales y sustantivos de la parte que pretende revisar se vean afectados de tal forma que ameriten una temprana intervención judicial.

El caso Federal Trade Comission v. Standard Oil Company of California, 449 U.S. 232, 101 S. Ct. 488, 66 L. Ed. 2d 416 (1980), presenta unos hechos similares al caso hoy ante nuestra consideración. En el mismo la Comisión Federal de Comercio expidió una queja contra la compañía

de petróleo recurrida, Standard Oil Company of California, alegando varias violaciones de ley. Mientras se dirimía y se adjudicaba la queja, dicha compañía intentó revisar ante el Tribunal de Distrito Federal la legalidad de la querella expedida por la Comisión, por alegadamente expedirla en violación de la ley. La Corte de Distrito desestimó la revisión. Sin embargo, la Corte de Apelaciones Federal para el Noveno Circuito revocó indicando que la actuación de la agencia constituía una resolución final apelable. El caso llegó al Supremo federal. Si bien el caso ante el Tribunal Supremo de los Estados Unidos giró en torno a si las actuaciones de la agencia constituían una resolución final que permitiera su revisión, en dicho caso se estableció lo inadecuado de las revisiones en este tipo de actuación por parte de la agencia. A esos fines, el Tribunal Supremo de los Estados Unidos expresó:

> Serving only to initiate the proceedings, the issuance of the complaint averring reason to believe has no legal force comparable to that of the regulation at issue in *Abbott Laboratories*, nor any comparable effect upon Socal's daily business. The regulations in *Abbott Laboratories* forced manufacturers to "risk serious criminal and civil penalties" for noncompliance, 387 U.S., at 153, 87 S.Ct., at 1517, or "change all their labels, advertisements, and promotional materials; ... destroy stocks of printed matter; and ... invest heavily in new printing type and new supplies." Id., at 152, 87 S.Ct., at 1517. Socal does not contend that the issuance of the complaint had any such legal or practical effect, except to impose upon Socal the burden of responding to the charges made against it. Although this burden certainly is substantial, it is different in kind and legal effect from

the burdens attending what heretofore has been considered to be final agency action. In contrast to the complaint's lack of legal or practical effect upon Socal, the effect of the judicial review sought by Socal is likely to be interference with the proper functioning of the agency and a burden for the courts. Judicial intervention into the agency process denies the agency an opportunity to correct its own mistakes and to apply its expertise. *Weinberger v. Salfi*, 422 U.S. 749, 765 95 S.Ct. 2457, 2466, 45 L. Ed. 2d 522 (1975). Intervention also leads to piecemeal review which at the least is inefficient and upon completion of the agency process might prove to have been unnecessary. *McGee v. United States*, 402 U.S. 479, 484, 91 S. Ct. 1565, 1568, 29 L. Ed. 2d 47 (1971); *Mc Kart v. United States*, 395 U.S. 185, 195, 89 S. Ct. 1657, 1663, 23 L. Ed. 2d 194 (1969). Furthermore, unlike the review in *Abbott Laboratories*, judicial review to determine whether the Commission decided that it had the requisite reason to believe would delay resolution of the ultimate question whether the Act was violated. Finally, every respondent to a Commission complaint could make the claim that Socal had made. Judicial review of the averments in the Commission's complaints should not be a means of turning prosecutor into defendant before adjudication concludes. Véase: Federal Trade Commisssion, et al. v. Standard Oil Company of California, ante, a las págs. 242-243.

En el citado caso el Tribunal Supremo de los Estados Unidos también reconoció que de existir un daño irreparable, entonces la intervención temprana de los tribunales estaría justificada. Ello no obstante, dicha Corte determinó que en el mencionado caso no se había probado daño alguno. Federal Trade Commission v. Standard Oil Company of California, ante, a la pág. 244.

E

Este Tribunal en diversas ocasiones ha reiterado que la interpretación de un estatuto, por el organismo facultado por ley para administrarlo y darle cumplimiento, merece gran respeto y deferencia judicial. Véanse: A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986); M & V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188-89 (1984); Tormos & D.A.C.O. v. F.R. Technology, 116 D.P.R. 153, 160 (1985). Así pues, en M & V Orthodontics v. Negdo. Seg. Empleo, ante, a la pág. 188-89, establecimos que:

> [n]o hay duda de que en este momento podríamos entrar a resolver el punto legal aquí en controversia. Preferimos, sin embargo, no hacerlo. Como es sabido, 'la interpretación administrativa de un estatuto por aquellos organismos encargados de ponerlos en vigor y velar porque sus fines se cumplan nos merecen un gran peso'. Ello es así por cuanto dichos organismos cuentan con una vasta experiencia y conocimiento (expertise) en relación con la materia con la que bregan día tras día. La interpretación que del estatuto éstos hagan y los fundamentos que aducen en apoyo de la misma, resultan de gran ayuda para los tribunales de justicia al éstos encontrarse en la posición de tener que pasar juicio sobre la corrección o no de las decisiones emitidas por dichos organismos. (citas omitidas).

II

La Oficina de la Procuradora argumenta ante nos que el foro apelativo intermedio erró al no desestimar el recurso incoado por MCS. Ello debido a que dicho recurso buscaba revisar una resolución interlocutoria, sin que se cumpliera con las excepciones reconocidas por nuestra jurisprudencia.

Por su parte, la recurrida MCS argumenta en su comparecencia que la resolución interlocutoria aquí en cuestión fue emitida sin jurisdicción y en violación a su debido proceso de ley, ameritando así que se prescinda del requisito de que, para fines de revisión administrativa, deba existir una resolución final emitida por la agencia. Para fundamentar su posición, MCS señala que la ausencia de un reglamento hace que la Oficina de la Procuradora carezca de jurisdicción para realizar investigaciones y emitir órdenes como la del caso de epígrafe. Arguye, además, que la falta de promulgación de un reglamento por parte de dicha Oficina en el caso de epígrafe constituye una violación al debido proceso de ley, tanto sustantivo como procesal. Asimismo, señala que la cuestión referente a la violación al debido proceso de ley es un planteamiento de índole constitucional y que no requiere del *"expertise"* de la agencia aquí en cuestión. No nos convencen sus argumentos. Veamos por qué.

De entrada, precisa determinar si el caso ante nos presenta la excepción reconocida por este Tribunal a la regla de que sólo serán revisables ante el tribunal apelativo intermedio las resoluciones finales de las agencias; a saber, la clara falta de jurisdicción de la agencia. Veamos.

Como es por todos conocido, el reglamento promulgado por una agencia debe circunscribirse a la ley bajo la cual el mismo fue promulgado. Franco v. Dept. de Educación, 148

D.P.R. 703, 712 (1999); Carrero v. Dept. de Educación, 141 D.P.R. 830, 837 (1996). Dicho de otra forma, el reglamento complementa la ley, pero no puede estar en conflicto con ésta. Franco v. Dept. de Educación, ante. En el caso de autos, la Oficina de la Procuradora fue creada por ley y sus facultades, entre ellas la de investigación, fueron atribuidas a ésta mediante legislación. Si bien dicha legislación provee para que se promulgue un reglamento, ello no es un requisito jurisdiccional para que ésta ejerza las funciones delegadas por la Legislatura. Sobre este particular, en Asociación de Farmacias de la Comunidad v. Departamento de Salud, res. el 5 de febrero de 2002, 2002 T.S.P.R. 13, este Tribunal reiteró la importancia de la promulgación de reglamentos, sobre todo cuando la ley habilitadora es ambigua; sin embargo, en ningún momento hemos adjudicado carácter jurisdiccional a dicha promulgación.

Lo anteriormente expuesto es suficiente para concluir que en el presente caso no está presente la excepción relativa a la "clara falta de jurisdicción" reconocida por nuestra jurisprudencia a los fines de permitir que un litigante pueda preterir el cause administrativo. Como señaláramos en Colón v. Méndez, 130 D.P.R. 433, 444 (1992), "no toda alegación de ausencia de jurisdicción va a tener el efecto de liberar a la parte de culminar sus gestiones en la agencia." En el referido caso fuimos enfáticos al expresar que "[c]ualquier otra interpretación

tendría el efecto de eliminar de facto la doctrina de agotamiento de remedio" y que "[a]nte una alegación de ausencia de jurisdicción, es a la propia agencia, salvo unas excepciones, a la que le corresponde hacer una determinación inicial de su propia jurisdicción." *Ibid*.

En lo que respecta a la excepción relativa a la "violación constitucional", este Tribunal ha resuelto que aquella parte que pretenda utilizar dicha excepción a los fines de prescindir del cauce administrativo debe probar, con hechos específicos y bien definidos, la necesidad de obviar dicho cauce. Véanse: Guadalupe v. Saldaña, Pres. U.P.R., ante; Rivera v. E.L.A., ante. Asimismo, en reiteradas ocasiones hemos resuelto que, para preterir el agotar remedios administrativos alegando una violación constitucional, dicha violación debe ser de tal magnitud y debe constituir un agravio tan intenso que justifique el desviarse del cauce administrativo. Véase: Mercado Vega v. U.P.R., ante.

En el caso de autos la parte que pretende revisar la resolución interlocutoria aquí en cuestión, MCS, no ha demostrado ante nos cuál es la necesidad de no esperar a que la agencia concernida termine sus procesos y emita una resolución u orden final. Sus argumentos referentes a la alegada violación al debido proceso de ley no presentan una injuria a derechos sustantivos o constitucionales de tal magnitud que ameriten el prescindir del requerimiento

de una resolución final de parte de la agencia para fines de revisar judicialmente sus actuaciones.

En cuanto al argumento relativo a que la consideración de las controversias planteadas en el caso de autos no requieren del *"expertise"* de la agencia, debemos primero establecer cuál fue la controversia presentada ante ésta. La misma se circunscribió a lo siguiente: ¿Es indispensable que la Oficina de la Procuradora promulgue un reglamento a los fines de realizar investigaciones y emitir órdenes como la envuelta en este caso o su ley habilitadora provee suficientes guías a esos efectos? ¿La falta de promulgación de este reglamento priva a la Oficina de la Procuradora de jurisdicción para proceder de acuerdo a su ley habilitadora o dicha jurisdicción emana directamente de esta última? ¿Viola dicha omisión el debido proceso de ley sustantivo de MCS o su derecho queda protegido en la medida en que la ley habilitadora contiene todos los requerimientos exigidos a ésta?

Como vemos, la propia naturaleza de las interrogantes planteadas en primera instancia ante la Oficina de la Procuradora exigieron que dicha agencia realizara <u>un análisis detallado y profundo</u> de los requerimientos de la ley habilitadora de dicha Oficina y de las obligaciones que esta ley le impuso. Ello implica, necesariamente, que en el presente caso <u>dicha agencia tuvo que enfrascarse en una interpretación de su propia ley habilitadora</u>.

Como precisáramos en el acápite anterior, la interpretación que realiza una agencia de su estatuto habilitador merece <u>gran deferencia</u> por parte de los tribunales. En vista de ello, y aunque reconocemos que en el presente caso la interpretación que realizó la Oficina de la Procuradora no necesariamente requirió del "expertise" de la misma, no cabe duda que su determinación merece gran deferencia en la medida en que ésta fue el producto de una interpretación de su propia ley habilitadora.

En vista de todo lo anteriormente expuesto, forzosa resulta ser la conclusión de que el Tribunal de Apelaciones erró al no desestimar la revisión incoada por MCS. Dicho recurso era improcedente en derecho toda vez que pretendía la revisión de una orden interlocutoria sin demostrar la existencia de elementos extraordinarios que ameritaran el prescindir de la exigencia de finalidad de las órdenes o resoluciones emitidas por una agencia administrativa para que su actuación pueda ser revisada por el Tribunal de Apelaciones.

Finalmente, debemos recordar que MCS no queda desprovista de remedio. Una vez finalicen los procedimientos ante la Oficina de la Procuradora, ésta podrá presentar sus planteamientos ante el foro judicial como parte de la revisión de la resolución final que en su día emita la referida Oficina.

III

Por todo lo anteriormente expuesto, procede expedir el auto de *certiorari* y dictar Sentencia revocatoria de la resolución emitida en el presente caso por el Tribunal de Apelaciones negándose a desestimar el recurso presentado por MCS y devolver el caso a la Oficina de la Procuradora para procedimientos ulteriores consistentes con lo aquí resuelto.

Se dictará Sentencia de conformidad.


FRANCISCO REBOLLO LÓPEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Oficina de la Procuradora del
Paciente

    Agencia-Peticionaria

      vs.

                             CC-2004-356      CERTIORARI

Aseguradora MCS, IPA 603

    Promovida

MCS Health Management Options
Inc.

    Recurrida


SENTENCIA


San Juan, Puerto Rico, a 22 de septiembre de 2004


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto de *certiorari* solicitado y se dicta Sentencia revocatoria de la resolución emitida en el presente caso por el Tribunal de Apelaciones negándose a desestimar el recurso presentado por MCS y se devuelve el caso a la Oficina de la Procuradora del Paciente para procedimientos ulteriores consistentes con lo aquí resuelto.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señor Fuster Berlingeri, señor Rivera Pérez y señora Rodríguez Rodríguez no intervinieron.


                  Patricia Otón Olivieri
              Secretaria del Tribunal Supremo